KUSKIN, J.T.C.
I
The primary issue in this appeal is whether, under N.J.S.A 54A:5-1(b) of the New Jersey Gross Income Tax Act, N.J.S.A 54A:1-1 to 54A:9-27, an operating loss from a prior year may be carried over and deducted in calculating “net profits from business.” N.J.SA. 54A:5-1(b) provides:
New Jersey gross income shall consist of the following categories of income: ...
b. Net profits from business. The net income from the operation of a business, profession or other activity after provision for all costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes____
*50 Plaintiffs contend that the quoted reference to “the method of accounting allowed for federal income tax purposes” incorporates the substance of § 172 of the Internal Revenue Code which specifically permits the deduction of net operating loss carryovers, generally for fifteen years following the taxable year in which the loss occurs.* [1] Plaintiffs further contend that deduction of such loss carryover should be permitted under the Gross Income Tax Act because such deduction is permitted under N.J.S.A 54:10A-4(k)(2)(G)(6)(B), which provides that, in calculating “entire net income” for purposes of the New Jersey Corporation Business Tax, N.J.S.A 54:10A-1 to -40, “a net operating loss for any taxable year ending after June 80, 1984 shall be a net operating loss carryover to each of the seven years following the year of loss.” Finally, plaintiffs contend that the Director is estopped from disallowing deduction by them of a loss carryover.
This matter was submitted on stipulated facts, Y2.8:8 — 1(b), which are as follows. On their 1991, 1992 and 1993 New Jersey Income Tax Resident Returns, plaintiffs reported their business income in accordance with Marrinan v. Director, Div. of Taxation, 10 N.J.Tax 542 (Tax 1989) in which the Tax Court determined that: (i) plaintiff John C. Marrinan individually, and not as a corporation, was engaged in the business of a securities trader, and (ii) dividends and interest income realized in the conduct of such business were not discrete items of income under N.J.S.A 54A:5-1(e) and 1(f) but rather constituted portions of business income for purposes of calculating net profits from business under N.J.S.A 54A:5-1(b).
*51 Plaintiffs’ 1991 return reported a tax liability of $4,117. Plaintiffs had already paid gross income tax of $8,000 and requested that the overpayment of $3,883 be applied to their 1992 gross income tax liability. Plaintiffs’ 1992 return reported a tax liability of $13,816, less the credit from the 1991 return (which had been reduced by the Division of Taxation to $3,573), leaving an outstanding liability of $10,243 which was paid when the return was filed. Plaintiffs’ 1993 return reported a tax liability of $663 which was paid when the return was filed.
On each of their 1991, 1992 and 1993 returns, plaintiffs, in calculating net profits from business, did not deduct losses incurred in previous tax years. On February 26, 1993, Mr. Marrinan wrote to the Division of Taxation requesting an explanation of why sole proprietorships and partnerships were not permitted to carry forward net operating losses under the Gross Income Tax Act while corporations were permitted to do so.[2] In reply to this inquiry, a tax services specialist from the Tax Services Branch of the Division of Taxation wrote to Mr. Marrinan on April 21, 1993 as follows:
[A] gain can only be offset against a loss in the same category of income if each occurs in the same year. No carry forward is permitted.
The New Jersey Gross Income Tax Act was intended as a tax on gross income from enumerated sources (as opposed to the Corporate Business Tax which is a tax on net income) and was purposely designed by the Legislature to avoid the loopholes and items of tax preference prevalent in the Federal Internal Revenue Code. The limitation of offset within the same category of income in the same tax year can only be changed by the Legislature.
Notwithstanding this response, on August 24, 1994, plaintiffs filed Amended New Jersey Income Tax Resident Returns for the years 1991, 1992 and 1993. In each amended return, plaintiffs reduced business profits by applying operating losses incurred in prior years, and, as a result, reduced their tax liability to zero for 1991 and 1992 and to $9 for 1993.
*52 On February 2,1995, a Division of Taxation computer generated a Notice of Adjustment setting forth the figures appearing on the 1993 amended return and indicating a $651.93 overpayment of 1993 taxes, which amount the Division refunded by check dated February 6,1995.
On March 2, 1995, the Division issued two Notices of Adjustment restoring the income tax figures reported on the plaintiffs’ original 1992 and 1993 returns. Plaintiffs challenged the disallowance of the loss carryovers, and, on December 13, 1995, the Director issued a Final Determination assessing the following amounts:
Year Gross Income Tax Penalty and Interest Total
1992 $ 0 $7,143.66 $7,143.66
1993 $651.58 $ 312.41 $ 963.99.
The Director made no assessment for 1991 because taxes had been overpaid for that year.
II
It is well settled that the New Jersey Gross Income Tax Act does not generally incorporate the taxing concepts of the Internal Revenue Code.
We disagree that the Legislature patterned the New Jersey Gross Income Tax Act on the Internal Revenue Code. Even a cursory comparison of the New Jersey Gross Income Tax and the Internal Revenue Code indicate that they are fundamentally disparate statutes. The federal income tax model was rejected by the Legislature in favor of a gross income tax to avoid the loopholes available under the Code. For example, the Code taxes all income, from whatever source derived, except income expressly exempted from tax. I.R.C. § 61. On the other hand, the Gross Income Tax Act only taxes expressly identified classes of income. The Code taxes all income on a net consolidated basis. The Gross Income Tax Act taxes some income on a net basis and other income on a gross basis. The Gross Income Tax Act establishes “categories” of income against which the cross netting of losses is barred. No such device is included in the Code.
The Act’s legislative history clearly indicates that the Legislature intended to and did reject the federal income tax model in favor of a gross income tax act in order to avoid tax loopholes available under the federal tax laws____ Since the Legislature rejected the Federal model of taxing income, other branches of *53 government may not superimpose the Code upon the Gross Income Tax Act in the guise of statutory construction.
[Smith v. Director, Div. of Taxation, 108 N.J. 19, 33-33, 527 A.2d 843 (1987) (citation omitted).]
The distinction between Gross Income Tax Act concepts and federal income tax concepts is not absolute. The Smith Court recognized that “when the Legislature intended to incorporate federal income tax concepts, it did so explicitly.” Id. at 33, 527 A.2d 843. As an example of such explicit incorporation, the Court cited the provision in N.J.S.A 54A:5-l(b) that net profits from business are to be determined in “accordance with the method of accounting allowed for federal tax purposes.” Ibid. The Supreme Court’s use of such example is not determinative of plaintiffs’ claims because: 1) the Court did not decide the scope and meaning of the quoted statutory language, and 2) in deciding whether loss carryovers may be deducted under N.J.S.A 54A:5-1(b), the provisions of N.J.S.A 54A:5-2, limiting deductible losses to those occurring “during the taxable year,” must also be considered. These latter provisions were not in issue and were not discussed in Smith.
Plaintiffs rely principally on Baldwin v. Director, Div. of Taxation, 10 N.J.Tax 273 (Tax 1988), aff'd o.b. per curiam, 237 N.J.Super. 327, 567 A.2d 1021 (App.Div.1990) in support of their contention that the deductibility of loss carryovers under I.R.C. § 172 is incorporated in N.J.S.A 54A:5-1(b). Baldwin involved the taxation of net gains from the disposition of property under N.J.S.A. 54A:5-1(c) which defines as taxable the “[n]et gains or net income, less net losses, derived from the sale, exchange or other disposition of property ... as determined in accordance with the method of accounting allowed for federal income tax purposes.” The Tax Court held that:
[The phrase “method of accounting allowed for federal tax purposes”] as used in N.J.S.A 54A:5-1c. is not limited to the recognized overall methods of accounting, such as the cash method or accrual method but rather was intended to include any method or system as used for federal tax purposes “by which taxpayers determine the amount of their income, gains, losses, deductions and credits, as well as the time when such items must be realized and recognized.”
[Id. at 284 (citation omitted).]
*54 The Court cited the language of N.J.S.A. 54A:5-1(b) to support this interpretation of N.J.S.A 54A:5-1(e):
If, in fact, plaintiffs’ limited interpretation of the phrase “method of accounting” [ie. that such phrase refers only to overall methods of accounting such as the cash basis or accrual basis method] were intended by the Legislature it would have been unnecessary to provide for “either on a cash o[r] accrual basis” in subsection b. because that would be included within the language that follows, ie., “in accordance with the method of accounting allowed for federal income tax purposes.”
[7d at 285 (citation omitted).]
The Tax Court concluded:
It becomes apparent, then, that what was intended was gains or losses that are recognized for federal income tax purposes in accordance with established federal income tax accounting procedures for measuring allowable gains and losses.

[Ibid.]

If N.J.S.A 54A:5-l(b) were the only statutory provision applicable to plaintiffs’ effort to deduct loss carryovers, Baldwin might lead to the conclusion that the loss carryover concept contained in I.R.C. § 172 is incorporated by the reference to “the method of accounting allowed for federal income tax purposes.” The deductibility of losses for Gross Income Tax purposes, however, is also governed by N.J.S.A. 54A:5-2 which provides:
Losses which occur within one category of gross income may be applied against other sources of gross income within the same category of gross income during the taxable year. However, a net loss in one category of gross income may not be applied against gross income in another category of gross income. (Emphasis added.)
In Estate of Guzzardi v. Director, Div. of Taxation, 15 N.J. Tax 395 (Tax 1995), aff'd. o.b. per curiam. 16 N.J.Tax 374 (App.Div. 1996), the Tax Court examined in depth the significance of N.J.S.A 54A:5-2 in relation to the reference to federal tax concepts in N.J.S.A 54A:5-1. The Court concluded that N.J.S.A 54A:5-2 is the more specific and, therefore, controlling statute, and that such statute prohibits deduction of prior years’ losses in calculating gross income under N.J.S.A. 54A:5-1.
While [N.J.S.A 54A:5-2] does not specify precisely that the income and losses that are to be offset must arise during the same taxable year, the phrase “during the taxable year” is superfluous unless it has that meaning. If the Legislature had intended that losses incurred in a prior year could be offset against income in the current year, it would have omitted the words “during the taxable year.” It must be presumed that the phrase “during the taxable year” has some meaning____ *55 The only plausible meaning that can be attributed to the phrase is that the items of loss and gross income must occur during the same taxable year.
[Guzzardi, supra 15 N.J.Tax at 400 (citation omitted).]
The Tax Court further concluded that the controlling status of N.J.S.A 54A:5-2 preempts any need to define the limits of the Baldwin holding.
It is not inconsistent with Baldwin to conclude that capital loss carryovers are not deductible under the gross income tax. There is no need in this ease to decide the scope of the reference to federal income tax accounting methods in N.J.S.A 54A:5-1.e. It suffices to say here that where there is a specific, contrary provision, such as N.J.S.A. 54A:5-2 effectively denying carryover losses, the specific provision controls.
[Id. at 403.]
Guzzardi involved the deductibility of capital loss carryovers under N.J.S.A. 54A:5-l(c). The Tax Court’s analysis is, however, equally applicable to subsection (b). Such analysis is also consistent with the legislative intent revealed by a comparison of the Corporation Business Tax Act with the Gross Income Tax Act. As noted above, the Legislature specifically provided for a loss carryover deduction in N.J.S.A. 54:10A-4(k)(2)(G)(6)(B) as part of the Corporation Business Tax Act. The Legislature’s failure to include in N.J.S.A. 54A:5-2, or in any other provision of the Gross Income Tax Act, a provision similar to N.J.S.A. 54:10A-4(k)(2)(G)(6)(B) indicates a legislative intent that loss carryover deductions are not permitted under N.J.S.A. 54A:5-l(b) or (c).See GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 308, 625 A.2d 468 (1993) (stating that: “Under the established canons of statutory construction, where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.”).
The Director contends that his interpretation of N.J.S.A 54A:5-1(b) and 2 is also supported by a proposed amendment to N.J.A.C. 18:35-1.25© promulgated March 17, 1995. 29 N.J.R. 852. This proposed amendment has little persuasive effect. The amendment does not constitute a “long-standing practical administrative construction [of these statutes],” in which the Legislature has acquiesced, so as to warrant deference from this Court. *56 Body-Rite Repair Co. v. Director, Div. of Taxation, 89 N.J. 540, 545, 446 A.2d 515 (1982).
In summary, I conclude that the analysis set forth in Guzzardi is applicable herein, and, as a result, the deduction of a loss carryover is not permitted under N.J.S.A. 54A:5-1(b). I need not, and do not, determine the extent to which the language of this subsection incorporates substantive federal income tax concepts for purposes of determining net profits from business.
Plaintiffs’ contention that N.J.S.A. 54:10A-4(k)(2)(G)(6)(B) provides an independent basis for allowing deduction of loss carryovers for gross income tax purposes requires little discussion. Firstly, although plaintiffs raised this issue in their Pretrial Memorandum, they faded to mention the issue in their Brief submitted pursuant to the Pretrial Order. Accordingly, I regard the issue as waived. See Weiss v. Cedar Park Cemetery, 240 N.J.Super. 86, 102, 572 A.2d 662 (App.Div.1990) (stating that “[t]he failure to adequately brief the issue[] requires it to be dismissed as waived”). Cf. R. 2:6-9 (stating that an inadequate brief may be suppressed). Secondly, in Marrinan v. Director, Div. of Taxation, supra, plaintiff John Marrinan specifically contended and testified that he conducted his business as an individual proprietorship and not as a corporation. The tax returns which are the basis for this appeal were filed under the Gross Income Tax Act and not the Corporation Business Tax Act. The two taxing statutes are not in pari materia, are not interchangeable, and provisions from one Act cannot be engrafted into the other. Cf. Richard’s Auto City, Inc. v. Director, Div. of Taxation, 140 N.J. 523, 540, 659 A.2d 1360 (1995) (stating that the New Jersey Corporation Business Act and Corporation Business Tax Act did not have “the same purpose or object” and, therefore, were not in pari materia.)
There remains for consideration plaintiffs’ contention that the Director’s issuance of a refund check, based upon plaintiffs’ 1993 amended return which contained a net loss carryover deduction, equitably estops the Director from disallowing such deduction. The refund related only to tax year 1993, and cannot, therefore, be *57 a basis for a claim of estoppel relating to plaintiffs’ 1992 tax liability. Accordingly, I need consider plaintiffs’ estoppel argument only with respect to 1993.
In order to invoke the doctrine of equitable estoppel against a public official or public entity, the party claiming the estoppel must demonstrate detrimental reliance on the action or inaction of the official or entity. “[T]he party seeking the benefit of estoppel has the burden of establishing that an officer of the State, conscious of the State’s true interest and aware of the private [party’s] misapprehension, stood by while the private [party] acted in detrimental reliance.” Newark v. Natural Resource Council in the Dept. of Envtl. Protection, 82 N.J. 530, 545, 414 A.2d 1304 (1980), cert. denied, 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980). In addition, the party must overcome the general reluctance of our courts to apply estoppel against a public official or public entity. In Black Whale, Inc. v. Director, Div. of Taxation, 15 N.J.Tax 338 (Tax 1995), the Tax Court prefaced a comprehensive survey of cases in which estoppel against a public entity was not permitted, Id. at 354-56, by commenting: “In practice, taxing authorities in New Jersey have never been es-topped, either by their spoken words, their written words, or their actions, from imposing a tax.” Id. at 355. Petition of Adamar of New Jersey, Inc., 222 N.J.Super. 464, 537 A.2d 704 (App.Div.1988), where the Appellate Division held that the Casino Control Commission was not estopped from reversing certain approvals granted by staff members and previously ratified by the Commission. The court set forth the following bases for its decision.
[T]here is no showing of detrimental reliance on the prior approvals, or a “manifest wrong and injustice” sufficient to invoke the doctrine of equitable estoppel against this governmental entity____ [citations omitted! Courts rarely invoke equitable estoppel against a governmental entity, particularly where estoppel interferes with essential governmental functions____ [citations omitted] To the extent that the staffs of the Commission and Division, and the Commission in ratifying their actions, erred in permitting payment on outstanding counter checks at branch offices, the Commission properly exercised its authority to reopen and vacate the approvals.
[Id. at 474-75, 537 A.2d 704 (citations omitted).]
*58 Airwork Service Division v. Director, Div. of Taxation, 97 N.J. 290, 478 A.2d 729 (1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985), illustrates the extent of judicial resistance to applying the doctrine of equitable estoppel against the Director of the Division of Taxation. In that case, the Supreme Court affirmed the Tax Court’s refusal to apply the doctrine where the Director had reversed a published position regarding the collection of sales tax from out-of-state customers who contracted for in-state repair services. The taxpayer claimed that, because it could no longer collect the sales tax from customers on previously completed transactions, the Director should be estopped from collecting the tax. The Supreme Court noted that “[t]he strong public and governmental interest in the collection of the tax imposed by the Legislature will usually outweigh the asserted reliance by a taxpayer----” Id. at 299, 478 A.2d 729.
Here, plaintiffs have not demonstrated detrimental reliance on any action or inaction of the Director, nor have they established the occurrence of any “manifest wrong and injustice.” Plaintiffs’ only reliance on the conduct of the Director was in retaining the erroneously issued 1993 refund of $651.93 after the Director issued a Notice of Adjustment canceling the refund and restoring plaintiffs’ original tax liability. Such Notice of Adjustment is dated less than one month after the date of the refund cheek. The Director did not, therefore, stand by while interest accrued on plaintiffs’ tax obligations, but acted with reasonable promptness to correct his error. Plaintiffs’ decision to retain the refund check after receiving the Notice of Adjustment cannot be attributed to reliance on the Director’s actions or inactions. Furthermore, such decision was not detrimental to plaintiffs because they continued to enjoy the use of the refund monies.
Plaintiffs’ claim of estoppel receives no support from Toys “R” Us, Inc. v. Director, Div. of Taxation, 300 N.J.Super. 163, 692 A.2d 111 (App.Div.1997). There, the Director, in a reversal of a published official position, declared certain labels to be exempt from sales and use tax. Such reversal occurred after expiration of the time for appeal from the assessment of the tax pursuant to the *59 Director’s previous position, and the Director resisted the taxpayer’s refund claim on the grounds of untimely filing. The Appellate Division remanded to the Tax Court to determine if grounds for estoppel existed. The Toys “R” Us facts are, on their face, substantially different from, and substantially more compelling than, the facts presented by plaintiffs.
Based on the foregoing analysis, I reject plaintiffs’ claim of equitable estoppel. I will enter judgment in favor of the Director for the taxes and interest claimed for tax years 1992 and 1993, together with additional interest on the taxes due, at the applicable statutory rate, from December 14, 1995 to the date of payment.
Counsel for the Director shall, within ten days, submit an appropriate form of Judgment pursuant to R. 4:42-l(c).

 I.R.C. § 172 provides, in relevant part, as follows:
(a) Deduction Allowed. — There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year.
(b) (1)(A) General rule. — Except as otherwise provided in this paragraph, a net operating loss for any taxable year—
(i) shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss, and
(ii) shall be a net operating loss carryover to each of the 15 taxable years following the taxable year of the loss.

 As discussed above, N.J.S.A. 54:10A-4(k)(2)(G)(6)(B), part of the Corporation Business Tax Act, permits such a loss carryover deduction.