SMALL, J.T.C.
The issue to be decided in this case is whether, in calculating taxable income under the Gross Income Tax Act (the “GIT”), N.J.S.A. 54A:1-1 to : 10-12, a taxpayer may deduct interest on a loan, the proceeds of which were used to purchase shares in a New Jersey subchapter S corporation, from his pro rata share of the S corporation’s income. N.J.S.A. 54A:2-1 and :5-1p. I have concluded, based on the analysis which follows, that such a deduction is not permitted.
I.
Plaintiffs, David Sidman (“Sidman”) and his wife Carol Sidman, contest a GIT deficiency assessment for the tax year 1994. Plaintiffs claim the right to deduct interest paid on a loan made to Sidman in 1993 for the purpose of purchasing a majority interest in the stock of an S corporation, Lux Homes, Inc. (“Lux”). The interest expense was disallowed by defendant, Director, Division of Taxation (“Director”), on the grounds that this interest is a personal expense and therefore not deductible.
Lux is a New Jersey corporation in the business of selling home building products. At all relevant times, Lux had 5,000 shares issued and outstanding. On November 23, 1992 Sidman agreed to purchase Marcel Bollag’s 3,709 shares and Jacqueline Bollag’s 645 shares of Lux stock. On that date, the outstanding shares of Lux were owned as follows:
*638 Mai'cel Bollag (Sidman’s father-in-law) •3,709 shares 74.18%
Jacqueline Bollag (Sidman’s sister-in-law) 645 shares 12.90%
David Sidman (plaintifi) 216 shares 4.32%
Lisa Sidman (Sidman’s daughter) 215 shares 4.30%
Brian Sidman (Sidman’s son) 215 shares 4.30%
Along with his ownership interest, Sidman was employed full-time by Lux as an executive employee.
■ Pursuant to the November 23, 1992 agreement, the purchase price would be equal to the net book value of the shares on December 31, 1992, with $250,000 due at the closing and the balance determined as provided by the agreement. Interest would be paid at a rate of 8% per. annum, payable in equal monthly installments over fifteen years.
The closing took place on January 5, 1993, with Sidman delivering the note called for in the purchase agreement. The purchase price was later fixed at $3,279,433. Thus, after the $250,000 payment at closing, Sidman owed Marcel Bollag $2,580,644 and Jacqueline Bollag $448,789, a total of $3,029,433. After the purchase, the outstanding shares of Lux were owned as follows:
David Sidman 4,570 shares 91.4%
Lisa Sidman 215 shares 4.3%
Brian Sidman 215 shares 4.3%
At all times relevant to this action, Sidman made regular monthly payments of $24,661.98 to Marcel Bollag, and $4,288.86 to Jacqueline Bollag, for a monthly total of $28,950.84.' These payments included principal and interest.
At all times Lux has been an S corporation for federal tax purposes. I.R.C. §§ 1361 to 1379. Lux elected S corporation status for New Jersey tax purposes effective January 1, 1994. Plaintiffs filed a joint federal income tax return and a joint New Jersey GIT return for calendar year 1994.
Sidman paid a total of $228,569 in interest to the Bollags during 1994. In reporting income on them 1994 federal and New Jersey *639 GIT returns, plaintiffs deducted the $228,569 in interest from Sidman’s pro rata share of Lux’s income. Thus, Sidman’s net pro rata share of Lux’s income for 1994 as reported consisted of ordinary income of $523,355 less interest expense of $228,569.
The New Jersey Division of Taxation disallowed the interest deduction and assessed a deficiency by letter dated April 14, 1998. The deficiency was timely protested, and the Director, by letter dated January 6, 1999, issued a final determination upholding the disallowance of the interest expense. Plaintiffs filed a timely complaint in this court.
The matter has been submitted on a stipulation of facts, initial and reply briefs of each party, and oral argument. R. 8:8 — 1(b).
II.
In 1976, New Jersey enacted the GIT. L. 1976, c. 47. It was intended, as opposed to the federal income tax, to be a simple, low rate tax on gross income, N.J.S.A. 54A:5-1, rather than on net income which is taxed under federal law (I.R.C. § 63). “New Jersey is one of two states that uses a ‘gross income’ measure for determining personal income tax liability rather than the more common ‘net income’ measure.” Statement to Assembly Committee, Substitute for Assembly Nos. 273 and 1870 (June 2, 1993) (the “Statement”). Over the years, the statute has been amended, L. 1993, c. 173; regulations have been adopted, N.J.A.C. 18:35-1.3(c)1; and the courts have interpreted the law, Sabino v. Director, Div. of Taxation, 14 N.J.Tax 501 (Tax 1995), rev’d, 296 N.J.Super. 269, 686 A.2d 1197 (App.Div.1996), on remand, 17 N.J.Tax 29 (Tax 1997); Reck v. Director, Div. of Taxation, 18 N.J.Tax 598 (Tax 2000), in a manner which has adopted certain federal net income tax principles.
Taxpayer argues that the logic of (1) New Jersey’s adoption of L. 1993, c. 173 (permitting subchapter S corporations to be taxed as passthrough entities in New Jersey); (2) Sabino v. Director, supra, and N.J.A.C. 18:35-1.3(d)2 (allowing partners to personally deduct expenses which if made by a partnership would be deductible from partnership net income); (3) Dantzler v. Director, Div. *640 of Taxation, 18 N.J.Tax 490 (Tax 1999) reconsideration denied, 18 N.J.Tax 507 (Tax 1999) (allowing a law partner to deduct interest on a loan used to make a required partnership capital contribution); (4) Koch v. Director, Div. of Taxation, 157 N.J. 1, 722 A.2d 918 (1999) (finding that a partner’s gross income tax basis, for purposes of calculating New Jersey gain in his partnership, was not his federal basis but his New Jersey cash basis), (5) Walsh v. State, Dept. of Treasury, Div. of Taxation, 10 N.J.Tax 447 (Tax 1989), aff’d per curiam, 240 N.J.Super. 42, 572 A.2d 222 (App.Div.1990) (finding that a New Jersey subehapter S shareholder’s basis, for purposes of calculating New Jersey gain, was not his federal basis but his New Jersey cash basis), and (6) Baldwin v. Director, Div. of Taxation, 10 N.J.Tax 273 (Tax 1988), aff’d o.b. per curiam, 237 N.J.Super. 327, 567 A.2d 1021 (App.Div.1990) (holding that the loss on the sale of a tractor (personal loss) could not be deducted from the gain on the sale of a house (personal gain) for New Jersey gross income tax purposes) compel a reading which would allow a subchapter S shareholder to calculate his net subchapter S income by deducting interest on a loan used to purchase shares in that corporation. N.J.S.A. 54:5-1p.
The Director counters that, although the subchapter S corporation would have been permitted to take the deduction for interest on a loan, the proceeds of which were used to redeem shares, and pass that interest deduction through to the shareholders, the fact that Sidman structured the transaction as a stock purchase defeats that treatment. “[A] voluntary business decision ‘is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred.’ ” General Trading Co. v. Director, Div. of Taxation, 83 N.J. 122, 138, 416 A.2d 37 (1980) citing, Commissioner v. National Alfalfa Dehydrating and Milling Co., 417 U.S. 134, 148, 94 S.Ct. 2129, 2137, 40 L.Ed. 2d 717; 727 (1974); Richard’s Auto City, Inc. v. Director, Div. of Taxation, 140 N.J. 523, 543, 659 A.2d 1360 (1995). Federal concepts are not implicitly adopted by New Jersey’s GIT. Smith v. Director, Div. of Taxation, 108 N.J. 19, 32-33, 527 A.2d 843 (1987); Marrinan v. Director, Div. of Taxation, 17 N.J.Tax 47, 52 (Tax *641 1997). The tax treatment advocated by taxpayer is not explicitly adopted by the GIT.
III.
L. 1993, c. 173 specifically recognized S corporation status if validly elected under N.J.S.A. 54:10A-5.22, and incorporated the definition of an S corporation in I.R.C., § 1361. Further, L. 1993, c. 173 added one more category to the definition of Gross Income— “Net pro rata share of S corporation income.” N.J.S.A. 54A:5-1p. L. 1993, c. 173 did not state, however, that New Jersey S corporation shareholders would be treated for New Jersey GIT purposes in exactly the same manner as they are treated for federal income tax purposes.
In this case, plaintiffs want to deduct interest on their acquisition indebtedness from their “net pro rata share of S corporation income.” There is no federal tax statute or regulation specifically permitting this deduction. Treas. Reg. § 1.163-8T(h) is silent on the issue. Plaintiffs rely on an I.R.S. administrative pronouncement and two private letter rulings. I.R.S. Notice 89-35, 1989-1 C.R. 675, Priv. Ltd. Rul. 90-87-027 (June 18, 1990); and Priv. Ltd. Rul. 91-16-008 (January 10, 1991).
I.R.S. Notice 89-35, supra, explains the allocation of interest expenses with respect to passthrough entities under I.R.C. § 168. I.R.C. § 163 describes the deduction of interest under the federal tax code. There is no comparable section of the New Jersey GIT. In enacting N.J.S.A. 54A:5-1p, taxing net pro rata share of subchapter S income, our Legislature did not adopt the principles embodied in I.R.C. § 168. The two private letter rulings describe the purchase of subchapter S stock by a shareholder in a position similar to Mr. Sidman’s situation. Priv. Ltd. Rul. 90-37-027, supra, and Priv. Ltd. Rid. 91-16-008, supra. Although it would appear that the stock purchase situation discussed in the private letter rulings would authorize the tax treatment claimed by plaintiff under federal tax law, it is inapplicable to the New Jersey GIT because its foundation is I.R.C. § 163. No comparable provision dealing with interest deductions is found in the GIT, and there is *642 no evidence that in enacting L. 1993, c. 173, our Legislature intended to incorporate those principles into the GIT. Additionally, both private letter rulings cite I.R.S. Notice 89-35, supra, as authority. Accordingly, all three IRS pronouncements derive them authority from I.R.C. § 163, a.provision not in or adopted by the GIT.
I.R.S. Publication 535, also relied on by taxpayer to justify the deductibility of interest in this case, describes how to allocate interest that is deductible for federal tax purposes. It is not the authority for deducting interest on a loan used to acquire subchapter S stock, or authority for classifying that interest as a deduction from net pro rata shares of subchapter S income for New Jersey GIT purposes. The principal purpose of that publication is to properly classify that interest as attributable to “passive” or “active” activities. That allocation has significant federal tax consequences. However, because N.J.S.A. 54A:5-2 prohibits the deduction of losses in one category of New Jersey gross income from gains in another category of New Jersey gross income, such allocation is surplusage for GIT purposes.
Dantzler v. Director, supra, permitted a partner in a law partnership to deduct interest on a loan used to make his required partnership capital contribution based on the following analysis: (1) a sole proprietor would have been permitted to make such a deduction, N.J.A.C. 18:35-1.1(h), example 1, (2) the Director’s regulation, N.J.A.C. 18:35-1.3(c)1, specifically states that partners of partnerships are to be treated the same way as sole proprietors. In Dantzler, this court rejected the Director's argument that Mr. Dantzler had two roles to play in his law partnership: (a) lawyer-employee and (b) investor. The court found that, in order to be am “investor” in a law partnership, an individual had to be a lawyer and that the interests of Mr. Dantzler (his percentage share of the partnership) were approximately 1.5% for all purposes.
In this case, Mr. Sidman decided, for business, family, estate planning, or perhaps other reasons, to acquire the bulk of the shares of Lux. He was not required to do so. Anyone was legally *643 free to purchase the shares of Lux. After his purchase, Mr. Sidman held 91.4% of Lux shares. His salary was increased substantially. I assume that the salary increase was due to his increased efforts on behalf of Lux. If not, there might have been issues of excessive compensation to Mr. Sidman after the transaction or to Mr. Bollag before the transaction. N.J.S.A. 54:10A-4(k); IRC § 162(a)(1); Treas. Reg. § 1.162-7, -8; Seventeen Thirty Corp. v. Director, Div. of Taxation, 18 N.J.Tax 168, 175-81 (Tax 1999). Lux’s balance sheet was unchanged. There was no addition of capital to the corporation as there was to Mr. Dantzler’s partnership after he contributed his loaned funds.
Thus Mr. Sidman, unlike Mr. Dantzler, had two distinct roles for which he received separate compensation: employee of Lux, for which he received a salary, and shareholder of Lux, for which he received his pro rata share of subchapter S income. His salary, unlike Mr. Dantzler’s compensation, was a function of his efforts on behalf of Lux, not his ownership interest in Lux. Mr. Sidman chose to continue Lux Homes as a subchapter S corporation, not as a partnership or other entity.
In taxing matters, the tax consequences follow the business form selected, not the other way around. General Trading Co., supra, Richard’s Auto City, Inc., supra. Tax consequences do not follow what a taxpayer might have done. Household Finance Corp. v. Director of Div. of Taxation, 36 N.J. 353, 177 A.2d 738, appeal dismissed and cert. denied, 371 U.S. 13, 83 S.Ct. 41, 9 L.Ed.2d 49 (1962). (“The question is whether a state must adjust its tax laws to avoid a disadvantage a taxpayer may experience because of its decision to incorporate a part of its operation. As a general proposition, the answer must be that it is for the taxpayer to make its business decisions in the light of tax statutes, rather than the other way around.” Id. at 362, 177 A.2d 738.). Seemingly inconsequential differences may result in substantially different tax treatment. There is no reason why interest on a loan used to purchase a partnership interest and interest on a loan used to purchase subchapter S stock must be treated identically for New Jersey GIT purposes.
*644 [L]aws [have been] upheld which taxed steam laundries but not others, Quong Wing v. Kirkendall, 223 U.S. 59, 32 S.Ct. 192, 56 L.Ed. 350 (1912); oleomargarine but not butter, A. Magnano Co. v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109 (1934); and anthracite but not bituminous coal, Heisler v. Thomas Colliery Co., 260 U.S. 245, 43 S.Ct. 83, 67 L.Ed. 237 (1922). A law which taxed certain income to racetracks in business for more than two years, but not others, was also upheld. State v. Garden State Racing Ass’n., supra, 136 N.J.L., at p. 1781, 54 A.2d 916].
[Wiramal Corp. v. Director of Div. of Taxation, 36 N.J. 201, 212, 175 A.2d 631 (1961).]
Nothing in the GIT, L. 1993, c. 173, Dantzler, supra, or Koch, supra, authorized the deduction of Mr. Sidman’s interest on his loans from his gross income.
Prior to 1994 and the enactment of L. 1993, c. 173, subchapter S corporations did not exist for New Jersey purposes. L. 1993, c. 173 permitted the creation of Subchapter S corporations in New Jersey, which “provides a special corporation business tax rate for the federally exempt income of corporations that have made a valid federal subchapter S election and that elect similar special treatment for New Jersey tax purposes.” Statement, supra. Thus, it greatly reduced the amount due for corporation business taxes, N.J.S.A. 54:10A-5(c)(2), and created a new category of income for New Jersey gross income tax purposes, N.J.S.A. 54A:5-1p, net pro rata share of S corporation income. N.J.S.A. 54A:5-9 exempts an S corporation from the tax imposed by the GIT.
The Statement makes clear that S corporations in New Jersey are to be taxed on the income that flows through to shareholders from the S corporation. The statute did not adopt those principles of federal tax law which may allow an S corporation shareholder to deduct acquisition indebtedness for subchapter S stock rather than include it in the shareholder’s cost basis or completely disregard it as personal interest.
Taxpayer argues from Koch, supra, and the recent discussion in Reck, supra, that New Jersey has adopted more federal tax concepts than originally imagined. Koch, supra, followed Walsh, supra and held that New Jersey basis in a partnership would be cash basis and not federal adjusted basis when the cash basis had *645 been reduced for federal purposes by allowed and allowable depreciation or losses in prior years. The case held that, since the federal deductions had not been allowed for GIT purposes, New Jersey basis had not been reduced and was not identical to federal basis. The Koch court also relied on the concept that return of capital should not be taxed. Reck, supra, op. at 610, extended that logic to enable this court, relying on Koch, supra, to not follow an Appellate Division decision distinguishing the tax treatment of 401(k) contributions from Simplified Employee Pension (“SEP”) Plan contributions. Mutch v. Division of Taxation, 9 N.J.Tax 612 (Tax 1988), aff’d o.b., 11 N.J.Tax 87 (App.Div.1989).[1]
*646 The Statement made clear that subchapter S corporations in New Jersey, unlike in the federal system, would be subject to a corporate level tax. Nowhere in the legislation (or any regulation) does it state that subchapter S corporations are to be treated as sole proprietors, unlike the regulations about partnerships and sole proprietorships. N.J.A.C. 18:35-1.3(c)l. The form is still that of a corporation. Acquisition indebtedness for purchase of New Jersey subehapter S corporation stock is not a deductible expense, although it may be included in Mr. Sidman’s basis in the stock. See N.J.S.A. 54A:5-lc. In the absence of a clear mandate to allow Mr. Sidman’s interest to be deductible, it is not.
IV.
Koch, supra, Walsh, supra, and Baldwin, supra, were each resolved by a discussion of N.J.S.A 54A:5-lc, and an analysis of the term “method of accounting allowed for federal income tax purposes,” as specifically included in the language of that subsection of the statute. N.J.S.A 54A:5-lc defines New Jersey gross income as it applies to a disposition of property.
The Court in each case stated that federal law could be applied where the Legislature includes the term “method of accounting allowed for federal income tax purposes.” The New Jersey Supreme Court stated:
This Court has expressly stated that when the Legislature included references to federal methods of accounting or nonrecognition provisions of the Internal Revenue Code, “it [explicitly] intended to incorporate federal income tax concepts.” Smith v. Director, Division of Taxation, 108 N.J. 19, 33, 527 A.2d 843 (1987).
*647 Courts have interpreted section 5~lc expansively and have recognized that section 5-lc “is not limited to the recognized overall methods of accounting, such as the cash method or accrual method, but rather was intended to include any method or system as used for federal tax purposes ‘by which taxpayers determine the amount of their income, gains, losses, deductions and credits, as well as the time when such items must be realized and recognized.’ ” Baldwin v. Director, Division of Taxation, 10 N.J.Tax 273, 284 (1988), aff’d, 237 N.J.Super. 327, 567 A.2d 1021 (App.Div.1990).
[Koch, supra, 157 N.J. at 10, 722 A.2d 918.]
Therefore, because the Legislature specifically referred to federal accounting methods in the language of the statute, those methods are to be used in calculating gross income on the disposition of property under N.J.S.A. 54A:5-1c. However, “the Legislature did not intend to incorporate through N.J.S.A. 54A:5-1e all the substantive provisions of the [Internal Revenue] Code relating to gains and losses.... ” Estate of Guzzardi v. Director, Div. of Taxation, 15 N.J.Tax 895, 403-4 (Tax 1995), aff’d o.b. per curiam, 16 N.J.Tax 374 (App.Div.1996).
The above-cited cases involve a disposition of property, where the Legislature specifically referenced federal accounting methods. In this case, Sidman is claiming, as a deduction from his pro rata share of S corporation income, a personal interest expense incurred in acquiring stock of that S corporation. The applicable provision associated with this issue is not N.J.S.A. 54A:5-1c, but N.J.S.A. 54A:5-1p, which simply states that gross income includes “Net pro rata share of S corporation income.”
“[W]hen the Legislature intended to incorporate federal income tax concepts, it did so explicitly.” Smith, supra, 108 N.J. at 33, 527 A.2d 843. See also N.J.S.A 54A:5-1b, N.J.S.A. 54A:5-1c. “New Jersey courts may apply federal principles of gross income only in those instances where the Legislature specifically referred to federal principles.” Tischler v. Director, Div. of Taxation, 17 N.J.Tax 283, 290 (Tax 1998). There is no language in N.J.S.A. 54A:5-1p, or in the Legislative history to this subsection, which references federal principles relating to the deductibility of acquisition indebtedness. Sidman received, as gross income, his net pro rata share of S corporation income.
*648 In Walsh v. Director, Div. of Taxation, 15 N.J.Tax 180, 185 (App.Div.1995), the Appellate Division indicated that the courts rely on the Legislature’s intent to create a “fairer” system of taxation by including fewer deductions than the federal system. There is no New Jersey statute which allows a deduction for personal interest expense incurred in acquiring the stock of an S corporation. Sidman conceded at trial that the interest was not deductible from any dividends received in 1993 when Lux was a C corporation, nor would it have been deductible as interest on a loan the proceeds of which were used to purchase C corporation stock.
N.J.S.A. 54A:8-3(c) provides that federal accounting methods are to be used for gross income tax purposes:
A taxpayer’s accounting method under this act shall be the same as his accounting method for Federal income tax purposes. In the absence of any accounting method for Federal income tax purposes, New Jersey taxable income shall be computed under such method as in the opinion of the director clearly reflects income.
This section of the statute is not the authority for the determination in Koch, supra, or Walsh, supra. They rely on N.J.S.A. 54A:5-1c, the specific section dealing with capital gains and losses, and they specifically reject the Director’s initial determination that New Jersey basis was identical with federal basis.
Assuming Mr. Sidman was permitted to deduct his interest from federal taxable income, neither N.J.S.A. 54A:5-1c, relating to capital gains, nor N.J.S.A. 54A:8-3, relating to federal accounting methods, is authority to change the substantive law of New Jersey, which by virtue of L. 1993, c. 173, permitted the pass-through of subehapter S income to subchapter S shareholders. Nowhere does the statute specifically permit the deduction of acquisition indebtedness for subehapter S shares. Those cases which have adopted federal concepts, against the Director’s protestations, have done so because authority for such treatment has been found in the statute, the Director’s regulations, and decided eases. Although I understand the logic of plaintiffs arguments, that logic has neither been adopted nor accepted by our Legislature. I find that broad statements in Koch, supra, are not *649 authority for me to change the treatment of subchapter S shareholders specifically adopted by our Legislature. The principles explained in Koch, supra, do not result in a wholesale adoption of Internal Revenue Code principles and substantive provisions into the GIT.
The GIT is fundamentally different from the Internal Revenue Code, in that it expressly forbids the deduction of losses in one category of income (for example, acquisition indebtedness) from profits in another category of income (for example, pro rata shares of subchapter S income). N.J.S.A. 54A:5-2. As previously indicated, the reference to federal accounting methods, be it in N.J.S.A. 54A:5-1c or N.J.S.A. 54A:8-3(c), does not incorporate federal substantive law into the New Jersey GIT.
For the above-stated reasons, the Director’s disallowance of Mr. Sidman’s 1994 interest deduction and assessment of additional gross income tax is affirmed.

 Prior to the enactment of N.J.S.A. 54A:6-21, no pension plan contributions were deductible for New Jersey GIT purposes. Due to pressure by businesses with 401(k) plans to have the contributions to those plans exempt from taxation for New Jersey GIT purposes, they and only they were exempted. Ibid. Mutch, supra, 9 N.J.Tax at 619. The Legislature did not include Keogh, IRA, SEP, and many other pension plan regimes that are deductible under the federal income tax.
Assembly Bill No. 3251 exempts from gross income, for income tax purposes, the amount an employer contributes on behalf of employees to an employee-sponsored tax deferred plan for retirement. The proposal would conform the present State statute to Section 401(k) of the Internal Revenue Code. Fiscal Impact.
The Division of Taxation states that there are no available data to offer a reasonable estimate; however, it was stated that this may result in a $1 million loss in revenue. Some of the lost revenue may be recaptured, after retirement or withdrawal from 1he trusts in future years. The division commented that these types of plans are only one of many which, if in the future receive the same treatment, could result in revenue losses that could be quite substantial.
[Assembly Committee Statement to Assembly No. 3251 (May 5, 1983) (enacted as L. 1983, c. 571) (Emphasis supplied).]
To extend the reading of N.J.S.A. 54A:6-21 to incorporate federal concepts of pension deductibility on the basis of Koch goes beyond the intention of the Legislature m enacting N.J.S.A. 54A:6-21 and the limited ruling of Koch. Reck, op. at 610. The Legislature acknowledged in the above-quoted statement that these other plans might receive this treatment in the future. No amendments to N.J.S.A 54A:6-21 have been made since 1983. To further hold that Koch can be extended to allow the deduction of interest on a loan to purchase corporate shares, be they of a C or S corporation, also goes beyond the intent of the drafters of the GIT and of L. 1993, c. 173. "[Tjhe intent of the New Jersey- legislature [was) to adopt an income tax shorn of the deductions allowed for federal income tax purposes." Estate of Guzzardi v. Director, Div. *646 of Taxation, 15 N.J.Tax 395, 404 (Tax 1995), aff’d o.b. per curiam, 16 N.J.Tax 374 (App.Div.1996). Although there is a logic to taking that next step, the Legislature did not take and need not have taken that step. See Wiramal, supra. Particularly in diverging from the original pattern of the GIT, the Legislature, in sacrificing revenue, must speak in clear and unequivocal terms. "Taxation is the rule and exemption is the exception to the rule. The legislative design to release one from his just proportion of the public burden should be expressed in clear and unequivocal terms." American Tel. & Tel.Co. v. Director, Div. of Taxation, 13 N.J.Tax 534, 543 (Tax 1993), citing Board of National Missions v. Neeld, 9 N.J. 349, 353, 88 A.2d 500 (1952).