SMALL, P.J.T.C.
This is another in a series of cases dealing with the characterization of income for New Jersey Gross Income Tax purposes as it is passed through from a “pass-through entity” {e.g., a partnership or subchapter S corporation) to an individual taxpayer. See Koch v. Director, Div. of Taxation, 157 N.J. 1, 722 A.2d 918 (1999); Smith v. Director, Div. of Taxation, 7 N.J.Tax 187 (Tax 1984), aff'd o.b., 8 N.J. Tax 319 (App.Div.1986), aff'd, 108 N.J. 19, 527 A.2d 843 (1987); Sidman v. Director, Div. of Taxation, 18 N.J.Tax 636 (Tax 2000), aff'd, 19 N.J.Tax 484 (App.Div.2001), decided June 28, 2001; Walsh v. Director, Div. of Taxation, 10 N.J.Tax 447 (Tax 1989), aff'd o.b., 240 N.J.Super. 42, 572 A.2d 222 (App.Div. 1990); Dantzler v. Director, Div. of Taxation, 18 N.J.Tax 490(Tax), reconsideration denied, 18 N.J.Tax 507 (Tax 1999); Sabino v. Director, Div. of Taxation, 17 N.J.Tax 29 (Tax 1997), on remand from 296 N.J.Super. 269, 686 A.2d 1197 (App.Div.1996), rev’g and remanding 14 N.J.Tax 501 (Tax 1995).
In this case, the issue is whether capital gains realized by a subchapter S corporation from the sale of virtually all of its assets are characterized as either (1) net gains or income from the disposition of property under N.J.S.A. 54A:5-1(c) or (2) net pro rata share of S corporation income under N.J.S.A. 54A:5-1(p). The reasons for the need to characterize income are the Gross Income Tax Act’s prohibition against the taking of losses or expenses in one category of income as a deduction from gains or income in another category of income under N.J.S.A. 54A:5-2, and an individual’s ability to deduct basis from the amount realized in calculating gains while there is no “basis” to deduct from the net pro rata share of subchapter S corporation income.
George K. Miller was the principal shareholder of Shore Cable Company of New Jersey, Inc. (“Shore Cable Co.”). Shore Cable Co. was a federal and New Jersey subchapter S corporation. In 1996, Shore Cable Co. sold virtually all of its assets to Lenfest *525 Atlantic. Subsequently in 1996, Shore Cable paid a liquidating dividend to Mr. Miller which included the proceeds of the sale to Lenfest Atlantic. On Mr. Miller’s federal income tax schedule K-1 (reporting income of shareholders from the subchapter S corporation), Shore Cable Co. indicated that Mr. Miller had ordinary income from the operations of Shore Cable Co. totaling $6,969 and a net gain under I.R.C. § 1231 of $5,218,555. On the similar schedule K-l for New Jersey gross income tax, Shore Cable Co. reported Mr. Miller’s subchapter S income allocated to New Jersey totaling $5,212,963. The New Jersey schedule K-l, unlike the federal schedule K-l, provides only one line for the reporting of subchapter S income. The federal return provides for eleven separate items of income such as: ordinary income, net income from rental real estate, interest, dividends, net short term capital gain, net long term capital gain, section 1231 gain, etc. For federal income tax purposes, Mr. Miller reported the two sources of income on separate lines of his federal income tax return. He deducted his basis in Shore Cable Co. of $1,432,925 and losses from other capital investments from the $5,218,555 amount realized, and reported the difference as a capital gain. For New Jersey gross income tax purposes, Mr. Miller reported a similar capital gain. On audit, the Director of the New Jersey Division of Taxation (the “Director”) assessed an additional tax by shifting the gain from the sale of the assets of Shore Cable Co. to the category of pro rata share of subchapter S income. Thus, the Director denied Mr. Miller the opportunity of deducting both (a) his basis in his stock of Shore Cable Co. and (b) the losses from other investments under N.J.S.A. 54A:5-2. The only issue in this case is how to properly categorize the gain on the sale of Shore Cable Co.’s assets for purposes of calculating Mr. Miller’s New Jersey Gross Income Tax liability. For the reasons discussed below, I find that Mr. Miller correctly reported his income from the sale of Shore Cable Co.’s assets in 1996 and that the Director’s assessment must be reversed.
The history of the characterization of pass-through income in New Jersey must start with Smith v. Director, Div. of Taxation, 108 N.J. 19, 527 A.2d 843 (1987). Layton Smith was a general *526 partner in Salomon Brothers, and Roger Geissler was a general partner in Easton & Company. Both entities were New York limited partnerships engaged in the business of investing in and trading securities. Id. at 21-22, 527 A.2d 843. The partners deducted their expenses in connection with their share of partnership trading activities, but the Director disallowed those deductions on the grounds that the partners were required to report dividends, capital gains, interest, and other ordinary income and expenses on separate lines of them New Jersey Gross Income Tax returns and that the expenses were nondeductible consistent with N.J.A.C. 18:35-1.14(c)(4), as then existing. Smith, supra, 108 N.J. at 22-23, 527 A.2d 843. The Tax Court, the Appellate Division, and our Supreme Court all disagreed and held that the regulation was inconsistent with the statute, that the ordinary business of the partnership was the trading of securities, and that the expenses of those partnerships were to be allowed as deductions before the entire income of the partnership was reported on the New Jersey Gross Income Tax return as distributive share of partnership income consistent with N.J.S.A 54A:5-1(k). The Supreme Court reached this conclusion in part by indicating that the distributive share of partnership income was not defined in the Gross Income Tax Act and found that the definition should be consistent with net profits from business under N.J.S.A 54A:5-1(b). Smith, supra, 108 N.J. at 25, 27-28, 527 A.2d 843.
Unlike the Smith case, where the taxpayers tried to aggregate all of their partnership income and expenses, the taxpayer in the present case seeks to disaggregate the elements of his subchapter S income so that he may have the benefit of deducting his basis in the stock of Shore Cable Co. from the amount realized on the sale of all of Shore Cable Co.’s assets and may deduct other capital losses from that capital gain.
The Director argues that, had Mr. Miller received a distribution of the assets of Shore Cable Co. and then sold them or had he sold his stock in Shore Cable Co. to Lenfest Atlantic, his income would have been characterized as the net gain from the disposition of property and he would have been allowed the deduction for his basis in the stock. However, relying in part on our courts’ long *527 standing adoption of the proposition that tax consequences must follow the form of the transaction and not what form the taxpayer might have chosen, enunciated by the late Chief Justice Wilentz in General Trading Co. v. Director, Div. of Taxation, 83 N.J. 122, 136-37, 416 A.2d 37 (1980), the Director argues that pro rata share of subchapter S income aggregates all elements of income of the subchapter S corporation before their characterization for New Jersey Gross Income Tax purposes. This position is to some extent consistent with the decision in Smith, v. Director, Div. of Taxation, supra, 108 N.J. 19, 527 A.2d 843, which rejected the Director’s then position that the income and expenses in all categories should not be aggregated before they are passed through to partners.
New Jersey’s recognition of subchapter S corporations as pass-through entities with tax treatment similar to their federal tax treatment is fairly recent. It was not until 1994 that subchapter S corporations were recognized in New Jersey as anything other than subchapter C corporations for income tax purposes. L. 1993, c. 173. This appears to be the first case to address the issue of the pass-through nature of the characterization of income from subchapter S corporations in New Jersey. But see Sidman v. Director, Div. Taxation, supra, 18 N.J.Tax 636, (denying a taxpayer’s deduction of acquisition indebtedness from subchapter S income under N.J.S.A. 54A:5-2).
Cases since Smith, supra, 108 N.J. 19, 527 A.2d 843, have refined our understanding of the treatment of pass-through income from partnerships. In Koch, v. Director, Div. of Taxation, supra, 157 N.J. 1, 722 A.2d 918, our Supreme Court determined that a partner’s basis in his partnership interest was not his federal adjusted basis but his New Jersey basis not reduced by losses which he was not allowed to deduct for New Jersey Gross Income Tax purposes in prior years. Id, at 6-7, 722 A.2d 918.
In Weintraub v. Director, Div. of Taxation, 19 N.J.Tax 65 (Tax 2000), this court held that the gain or income resulting from the forgiveness of indebtedness on the purchase and sale of a major asset by a taxpayer not generally in that business was not *528 distributive share of partnership income under N.J.S.A. 54A:5-1(k). Id. at 84.
Mr. Miller argues by analogy that his gam in this case was the result of the sale of the major assets of Shore Cable Co. and was not a result of the trade or business of Shore Cable Co. Accordingly, that gain should not be characterized as distributive share of subchapter S income. In opposition, the Director argues that Weintraub, supra, 19 N.J. Tax 65, discussed taxation of income from a partnership and this case deals with taxation of income from a subchapter S corporation, and these two types of pass-through entities and their partners and shareholders are treated differently for gross income tax purposes. The Director’s authority for this position is his regulations, which state that partnerships should be treated like sole proprietors. N.J.A.C. 18:35-1.3(c). There is no parallel regulation under the Gross Income Tax for subchapter S corporations. This may be so solely because the laws permitting pass-through treatment for subchapter S corporations were only in effect from January 1, 1994, and the Director does not always adopt implementing regulations within three years. Our Supreme Court has explained that the treatment of basis in partnerships and subchapter S corporations should be the same. Koch, supra, 157 N.J. at 11-13, 722 A.2d 918. But see Sidman, supra, 19 N.J.Tax 484, 491-92 (App. Div.) (explaining that partnerships and S corporations are different).
There is no question that, up through 1993 and the enactment of chapter 173 of the laws of 1993, income from subchapter S corporations was treated differently for New Jersey Gross Income Tax purposes than for federal tax purposes. In enacting the statute, New Jersey attempted to treat subchapter S corporations in a similar, but not identical, fashion to the way in which they are treated for federal purposes. See Assembly Appropriations Comm. Statement to A. 273 and A. 1870, which were enacted as L. 1993, c. 173 (codified at N.J.S.A. 54:10A-4). Nevertheless, the New Jersey schedule K-1, which provides for the reporting of income derived from subchapter S corporations, does not provide the detailed categories of income that the federal schedule K-l provides. Perhaps, relying on our Supreme Court’s determinations *529 in Smith, supra, 108 N.J. 19, 527 A.2d 843 the New Jersey Division of Taxation determined that all categories of income within a subchapter S corporation should be aggregated. Nevertheless, I do not find that it was the Legislature’s intent to aggregate all categories of income within a subchapter S corporation, a practice differing from the federal practice and not specifically described as a difference in the legislative history preceding the enactment of L. 1993, c. 173. See Statement to Assembly Comm. Substitute for A. 273 and A. 1870 (June 3, 1993), discussed infra at page 530 of this opinion.
Similar to Weintraub, supra, 19 N.J.Tax 65, where the court found forgiveness of indebtedness to be something other than income from a normal trade or business, I find that the sale of all of the assets of Shore Cable Co. was not part of Shore Cable Co.’s ordinary trade or business.
N.J.S.A. 54A:5-10, amended by L. 1993, c. 173, § 12, added a number of definitions to the New Jersey Gross Income Tax with regard to its recognition of subchapter S corporations. In part, it states:
“Pro rata share” means the portion of any items attributable to an S corporation shareholder for a taxable year determined in the manner provided in, and subject to any election made under subsection (a) of section 1377 or subsection (e) of section 1362 of the federal Internal Revenue Code of 1986, 26 U.S.C. § 1377 and § 1362.
“S corporation income” means the net of an S corporation’s items of income, loss or deduction taken into account by the shareholder in the manner provided in section 1366 of the federal Internal Revenue Code of 1986 ...
[Emphasis added.1
N.J.S.A. 54A:5-10(c) further states that “[t]he character of any S corporation item taken into account by a shareholder of an S corporation shall be determined as if such items were received or incurred by the S corporation and not its shareholder.”
As stated above, the sale of all of Shore Cable Co.’s assets was a capital transaction and not income realized in Shore Cable Co.’s ordinary trade or business.
Section 1366 of the Internal Revenue Code provides in part:
(b) Character passed thru.—
*530 The character of any item included in a shareholder’s pro rata share under paragraph (1) of subsection (a) shall be determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation.
(c) Gross income of a shareholder.—
In any case where it is necessary to determine the gross income of a shareholder for purposes;of this title, such gross income shall include the shareholder’s pro rata share of the gross income of the corporation.
[I.R.C. § 1366 (emphasis added).]
The implementing federal regulation Treas. Reg. § 1.1366-1 includes the following illustration:
(b) Character of items constituting pro rata share—
(1) In general. Except as provided in paragraph (b)(2) or (3) of this section, the character of any item of income, loss, deduction, or credit described in section 1366(a)(1)(A) or (B) and paragraph (a) of this section is determined for the S corporation and retains that character in the hands of the shareholder. For example, if an S corporation has capital gain on the sale or exchange of a capital asset, a shareholder’s pro rata share of that gain will also be characterized as a capital gain regardless of whether the shareholder is otherwise a dealer in that type of property.
The Director contends that “the federal scheme provided in I.R.C. § 1366 as to retention of the character of the passed through income does not control.”
The Director further argues that the language and intent of the drafters of L. 1993, c. 173, was specifically intended to depart from I.R.C. § 1366. See Sidman, supra, 18 N.J.Tax at 641, and 19 N.J.Tax 484, 490-91, 493-94 (App. Div.). In fact, the Director points out that, in the original versions of A. 273 and A. 1870 (1993), the Legislature had proposed a wholesale adoption of I.R.C. §§ 1366 and 1368. But the substitute bill (June 2, 1993) was accompanied by the following statement:
The Bill differs from the federal S corporation treatment for two significant reasons. First, New Jersey is one of two states that uses a “gross income” measure for determining personal income tax liability rather than the more common “net income” measure. Thus, net losses from S corporations are not utilized against other income. Second.....a corporation level tax is retained ....
[Assembly Appropriations Comm. Statement to A. 273 and A. 1870, enacted as L. 1993, c. 173 (codified at N.J.S.A. 54:10A-4).]
The June 2, 1993 statement to A. 273 and A. 1870 also states: “New Jersey residents will generally be taxed on all of them S corporation income regardless of its source. All of the items of *531 income, loss and deduction of S corporations are passed through to shareholders and netted in a single New Jersey gross income tax category.” Ibid, (emphasis added). The Legislature specified the two significant differences between New Jersey and Federal taxation of S corporations and their shareholders, and stated that otherwise New Jersey treatment would follow Federal treatment, which would “generally” lead to the aggregation of all items of income loss and deduction. The Legislature did not specifically discuss capital transactions, but only trade or business transactions. The committee did not specifically cite as a “significant” difference that income from the sale of capital assets would be the gross proceeds of that sale without respect to the taxpayer’s basis in that asset (which would be a very significant difference from the federal pattern of taxation). Consistent with the legislative desire to mimic federal S corporation treatment with specific exceptions, and consistent with the Gross Income Tax’s taxation of net capital gains, not net proceeds, I find that in this case Mr. Miller must be allowed to deduct his basis in Shore Cable Co. stock from the passed-through proceeds of Shore Cable Co.’s sale of all of its assets.
The Director has made a very careful argument based on his prior interpretations of the treatment of subchapter S corporation income in 24 State Tax News 3 (Spring 1994).[1] The Director *532 further argues that great deference should be paid to his interpretation. Continental Gypsum Co. v. Director, Div. of Taxation, 19 N.J.Tax 221, 232 (Tax 2000) (citations omitted); Sharps Pixley, Inc. v. Director, Div. of Taxation, 16 N.J.Tax 626, 642-43 (Tax 1997) (citation omitted). But see New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575, 384 A.2d 795 (1978) (citation omitted) (clarifying that the deference granted by a court is “not total, as the courts remain the ‘final authorities’ on issues of statutory construction and are not obliged to ‘rubber stamp’ them approval of the administrative interpretation”); and. Smith, supra, 108 N.J. at 26, 527 A.2d 843 (citation omitted) (explaining that “administrative regulations are not binding on the courts and a regulation will fall if a court finds that the rule is inconsistent with the statute it purports to interpret”). The Director argues that there are no categories of income from New Jersey S corporations, except net pro rata share of subchapter S income. This is precisely the opposite position that the Director took in Smith. As a matter of pure logic there is some support for the Director’s argument. But, in the context of the entire Gross Income Tax Act and its attempt to mimic federal subchapter S treatment with limited exceptions, the position that the proceeds of capital gains of the S corporation fall into the category of net pro rata share of S corporation income and thus result in taxation of the gross proceeds, as opposed to the net gains of the transaction, is inconsistent with N.J.S.A. 54A:5-1(c), which imposes a tax on “[n]et gains ... from disposition of property,” not on gross proceeds. N.J.S.A. 54A:5-1(c) (emphasis added). See also Stephen Little Trucking v. Director, Div. of Taxation, 19 N.J.Tax 461 (Tax 2001):
It is well settled that in construing a statute the court is not to be guided by a single sentence or the words of a sentence but must look to the provisions of the whole law, and to its object and policy. In searching for the true understanding and proper application of a statute the language must be read perceptively and sensibly with a view toward fulfilling the Legislature’s intent.
*533 [(Id at 465) (quoting Cumberland Arms Assocs. v. Burlington Tp., 10 N.J.Tax 255, 268 (Tax 1988).)]
Although New Jersey’s personal income tax is a gross income tax, it imposes a tax on net profits (N.J.S.A. 54A:5—1(b)), net gains (N.J.S.A. 54A:5-1(c)), and net gains or income from rents or royalties (N.J.S.A. 54A:5—1(d)), etc. To include the proceeds of the sale of virtually all of the assets of a subchapter S corporation in the category of net pro rata share of S corporation income (N.J.S.A. 54A:5—1(p)), and thus deny a taxpayer the right to deduct his basis in that asset in calculating his Gross Income Tax liability would be inconsistent with N.J.S.A. 54A:5-1(c)’s taxation of net profits and net gains in different categories of income while disallowing deductions of losses in one category from gains in another. N.J.S.A. 54A:5-2. It would also be inconsistent with the Legislature’s intent in enacting L. 1993, c. 173, to provide taxpayers with the advantage of pass-through treatment for subchapter S income similar, although not identical, to federal treatment. To tax the gross proceeds would be inconsistent with the Supreme Court’s admonition “that a taxpayer cannot be taxed on a return of capital” and that it was “the Legislature’s plan that the return of capital not be taxed.” Koch v. Director, Div. of Taxation, supra, 157 N.J. at 12, 14, 722 A.2d 918.
Reading all sections of the statute and the courts’ applications of the statute to specific cases, I conclude that the Director’s aggregation of capital gain income into the category of pro rata share of subchapter S income is not appropriate in this case. Net pro rata share of subchapter S income, like the net partnership income in Smith, supra, 108 N.J. 19, 527 A.2d 843 is the income from the ordinary trade or business of the subchapter S corporation or the partnership. To the extent that a partnership or S corporation has income outside of its ordinary trade or business, such as capital gains for a corporation that is not in the business of investing in or trading capital assets, that income retains its character (gain from the disposition of property) when it is passed through to the partners or subchapter S shareholders. The Director should consider amending his schedule K-1 to reflect this holding.
*534 The intent of the Legislature in amending the New Jersey Gross Income Tax to allow for subchapter S corporations was to have the subchapter S corporation function as a pass-through entity just like a partnership. Just as the Director’s initial interpretation in Smith, disallowing the aggregation of certain items was not appropriate in the case of an investment partnership, it is not appropriate to aggregate items in this case where essentially all of the assets of the corporation were sold in a single capital transaction. The ultimate result is that part of the amounts realized by Mr. Miller were a reten of his capital investmept, his basis, in the subchapter S corporation. New Jersey does not tax that return of capital; only net income is taxed. See Walsh v. Director, Div. of Taxation, supra, 10 N.J.Tax at 461-63; and Koch, supra, 157 N.J. at 9, 12, 14, 722 A.2d 918.
Thus, Koch compels the conclusion that Mr. Miller be allowed to deduct his basis in Shore Cable Co. from the proceeds of the sale of Shore Cable Co.’s assets. It does not mandate that he also be allowed to deduct other capital losses from his net gains from the sale of Shore Cable Co.’s property. The only way that Mr. Miller can deduct his basis in Shore Cable Co. from the gain on the sale of Shore Cable Co.’s property is to characterize that gain as a gain on the disposition of property. N.J.S.A. 54A:5-1(c). Koch, relied on the prohibition of the imposition of the Gross Income Tax on the return of capital. To limit the holding in Koch to that narrow basis (forbidding taxation on the return of capital) rather than extending it to characterize Mr. Miller’s gain as gain on the disposition of property results in illogical complexity in the characterization of income. Koch did not deal with the issue of characterization of income because the court was able to decide that case on the theory of not taxing the return of capital. Nevertheless, Koch implicitly concluded that, since the income was a return of capital, it resulted from the disposition of capital assets (property) not from ordinary ti-ade or business income. The principal logic supporting a ruling limiting Koch to its precise holding and not the logical consequences of that holding is the maximization of state revenue. That logic is not favored as the *535 basis for a ruling by this court. See Allen v. Director, 14 N.J.Tax 385, 393 (Tax 1994), aff'd o.b., 15 N.J.Tax 704 (App.Div.1996).
The fact that Shore Cable Co. was liquidated, and paid a liquidating dividend to Mr. Miller, after the sale of its property, is further support for a characterization of Mr. Miller’s income from the sale of Shore Cable Co.’s assets as gain on the sale of property rather than distributive share of subchapter S income. The characterization of the income, as it flowed through from the S corporation to Mr. Miller, was a result of the nature of the income. If it had been from the ordinary business of Shore Cable Co., then it would have been pro rata share of S corporation income. Because the income was derived from the sale of assets, not in the ordinary course of Shore Cable Co.’s trade or business, it must be characterized as income from the disposition of property.
The taxation of the holders of partnership interests or subchapter S shareholders in New Jersey is not simple. It does not exactly mimic treatment under the Internal Revenue Code. As the previously decided and cited cases illustrate, the results are extremely fact sensitive. If certain black letter rules are to be deduced from the decided case law, they relate to the need to make findings as to what the trade or business of the pass through entity is-thus in Smith, supra, 108 N.J. 19, 527 A.2d 843, the partnership could net its gains, losses, and expenses related to the trading of securities and other financial instruments, rather than passing through each item of income and expense, because its business was the trading of securities and other financial instruments. In this case, Shore Cable Co.’s sale of virtually all of its assets was outside of its normal trade or business and so those proceeds were not part of its subchapter S income and not part of Mr. Miller’s pro rata share of subchapter S income.
In Dantzler v. Director, Div. of Taxation, supra, 18 N.J.Tax 490, Mr. Dantzler’s trade or business was being a lawyer, and he was allowed to deduct interest on a loan used to finance his required capital contribution. 18 N.J.Tax at 493, 504. In Sidman v. Director, Div. of Taxation, supra, 18 N.J.Tax 636, interest paid by Mr. Sidman on money borrowed to purchase subchapter S *536 shares was not deductible from his net pro rata share of subchap-ter S income because, the shares, if and when sold, would result in a capital gain or loss, a different category of income than net pro rata share of S corporation income. Id. at 637, 647-48. I note that, in the Appellate Division’s recent analysis of Dantzler, they found that Mr. Dantzler was allowed to deduct interest on money used to make a capital contribution to a partnership because partners and sole proprietors were to be treated alike. See Sidman, supra, 19 N.J.Tax 484, 491 (App. Div.). The analysis in Dantzler, supra, 18 N.J.Tax 490, relied as well and placed great emphasis on the fact that Mr. Dantzler’s capital contribution to the law partnership was required. Dantzler, supra, on motion to reconsider, Id. at 510-14. The fact that Mr. Dantzler’s contribution was required and Mr. Sidman’s stock purchase was voluntary is how this court, in part, distinguished its conclusions in Dantzler and Sidman allowing an interest deduction in one case and disallowing it in the other. Sidman, supra, 18 N.J.Tax, at 642-43.
The differences in the tax treatment of income from pass through entities to their owners are subtle. The conclusions are based, in each case, on an examination of the facts against the background of certain principles underlying the New Jersey Gross Income Tax:
(1) Income is categorized and losses or expenses in one category are not deductible from income or gains in another. N.J.S.A. 54A:5-2. But within categories, gains and losses may be netted.
(2) The tax is a gross income tax not a net income lax and thus different from the Federal Income Tax. But it taxes categories of net income not gross sales or gross proceeds. The return of capital is not taxed. Walsh, supra, 10 N.J. Tax 447, and Koch, supra, 157 N.J. 1[, 722 A.2d 918].
(3) Over the years, certain, but not all concepts of Federal Income Taxation have been incorporated into the New Jersey Gross Income Tax:
(a) L. 1983, c. 571, allowing deductions for contributions to 401K pension plans, but not contributions to all federally recognized pension plans. See Sidman, supra, 18 N.J.Tax at 645-46 n. 1.
(b) L. 1993, c. 173, recognizing subchapler S corporations as pass through entities for New Jersey Gross Income Tax purposes.
(4) The aggregation or disaggregation of income from a pass through entity under the New Jersey Gross Income Tax is extremely fact sensitive and depends, in part, on the nature of the income and expenses, (Weintraub v. Director, Div. of Taxation, supra 19 N.J.Tax 65, and Sabino v. Director, Div. of Taxation, *537 supra, 17 N J.Tax 29) the trade or business of the entity (Smith v. Director, Div. of Taxation, supra, 108 N.J. 19, 527 A.2d 843) and the relationship of the partners/S corporation’s shareholders to the entity (Dantzler; supra, and Sidman, supra).
As Justice Holmes said, “a page of history is worth a volume of logic.” New York Trust Co. v. Eisner, 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963 (1921). It is never simple to determine legislative intent when the language of the statute is less than precise, and the statute must be applied to fact situations not contemplated by the Legislature. As the court in Cumberland Arms Assoc, v. Burlington Tp., supra, 10 N.J.Tax 255, stated, the sections of the statute must not be read in isolation from each other. Id. at 268. History often better informs our conclusions than a textual analysis of the statute, which requires far more critical scrutiny than that inherent in the legislative process. See generally Koch v. Director, Div. of Taxation, supra, 157 N.J. at 14, 722 A.2d 918 (harmonizing three seemingly conflicting concepts of the Gross Income Tax to avoid taxation of the return of capital.) See also Stephen Little Trucking v. Director, Div. of Taxation, supra, 19 N.J.Tax 461 (analyzing the entire structure of the Sales Tax Act rather than looking at a single section of the statute to specify how tax is to be collected from contractors).
For all of the above reasons the Director’s assessment was not in accord with the law; judgment will be entered for the plaintiff.

 But see State Tax News 3 which states:
In determining the “entire net income" for New Jersey S corporations, the Federal 1120S, line 21, is to be modified to reflect all distributive items oí income and expense plus or minus the adjustments enumerated in CBT 54:10A-4(k) .. The allocation provisions under Section 6 of the Statute remain unchanged and applicable to New Jersey S c corporations.
[T|he legislation defines “operational income" as income from tangible and intangible property if the acquisitions, management, and disposition of the property constitute integral parts of the taxpayer’s regular trade or business operations and includes investment income serving an operational function. With regard to non-operational income, the taxpayer must clearly demonstrate that it is not operational in order to exclude it from entire net income. Such non-operational income, other than income attributable to taxpayers who have a New Jersey location as their principal place from which their business is managed, is not subject to allocation.
*532 Thus non-operational income for foreign S-coiporations is not allocable to New Jersey and not a part of entire net income for the Corporation Business Tax. Similarly as this opinion holds it is not part of net pro rata share of S corporation income.