799 A.2d 660 (2002)
352 N.J. Super. 98
George K. MILLER, Jr., and Debra Miller, Plaintiffs-Respondents,
v.
DIRECTOR, DIVISION OF TAXATION, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 2002.
Decided June 17, 2002.
*661 Mala Narayanan, Deputy Attorney General, argued the cause for Appellant (David Samson, Attorney General, attorney; Patrick DeAlmeida, Deputy Attorney General, of counsel; Ms. Narayanan, on the brief).
Daniel Gallagher, Pleasantville, argued the cause for respondents (George K. Miller, Jr., and Associates, attorneys; Mr. Gallagher, on the brief).
Before Judges BRAITHWAITE, COBURN and WEISSBARD.
The opinion of the court was delivered by COBURN, J.A.D.
This appeal concerns the taxation of a shareholder of a Subchapter S corporation under the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 to 10-12 (the "Act"). It arose from two related transactions. In the first transaction, plaintiff George K. Miller,[1] the corporation's principal shareholder, had the corporation sell virtually all its assets to a third party for cash. In the second transaction, which occurred in the same tax year, Miller liquidated his stock in the corporation for the cash generated by the asset sale plus the balance of the corporation's ordinary income. He treated the two transactions as if they were one, reporting what he calculated as his gain under the general provision of *662 N.J.S.A. 54A:5-1(c) concerned with net gains from disposition of property. Miller followed that course to avoid a tax on the return of capital.
The Director of the Division of Taxation issued a deficiency notice based on a literal application of the language used in the Act. He determined that the cash generated by the first transaction had to be reported as Miller's net pro rata share of Subchapter S corporation income under N.J.S.A. 54A:5-1(p). The Director's re-categorization of that income substantially increased Miller's basis in his stock; as a result, the Director determined with respect to the second transaction that Miller was entitled to report a loss under the portion of Subsection 5-1(c) specifically governing the sale of Subchapter S corporation stock. The Director's literal interpretation of the Act created an increased tax assessment, including interest, of $89,708.
Plaintiffs sued the Director in the Tax Court, contending that his calculation improperly taxed a return on capital. Both sides moved for summary judgment. The Tax Court agreed with plaintiffs in a reported opinion, Miller v. Director, Div. of Taxation, 19 N.J.Tax 522 (Tax 2001), and the Director appealed.
Although we concur, based on this record, in the Tax Court's rejection of the Director's interpretation of the Act, we disagree with its solution. At oral argument, we suggested an alternative interpretation of the Act; namely, treating the two transactions as one involving a sale of stock under that portion of N.J.S.A. 54A:5-1(c) specifically addressed to Subchapter S corporations. Plaintiffs adopted our proposal as a reasonable alternative, if their own approach was rejected. The Deputy Attorney General took the position that although our proposal seemed to have merit, it might also create problems because of the Act's intricate provisions for taxation in this context.
We have always recognized that the Director's interpretation of specialized and complex tax provisions "is entitled to great respect by the courts." Metromedia Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984) (citations omitted). On the other hand, we also generally defer to the Tax Court's expertise. See, e.g., Little Egg Harbor Tp. v. Bonsangue, 316 N.J.Super. 271, 285, 720 A.2d 369 (App.Div.1998). Since on this record, we reject the resolutions of this case by the Director and the Tax Court, and since the issue we raised had not been briefed, and since its resolution might benefit from further development of the relevant facts and further analysis by the Director, we reverse and remand for further proceedings in the Tax Court.

I
The facts are not in dispute. Miller was the principal shareholder of Shore Cable Company of New Jersey, Inc. ("Shore Cable"), a federal and New Jersey Subchapter S corporation. In 1996, Miller had Shore Cable sell virtually all its assets to Lenfest Atlantic, Inc., ("Lenfest"), for approximately $5 million. In the same year, Shore Cable paid a liquidating dividend to Miller that included the proceeds of the sale to Lenfest plus what the Tax Court conceded was "ordinary income from the operations of Shore Cable ... totaling $6,969." 19 N.J.Tax at 525. On the New Jersey Schedule K-1, which provides only one line for reporting Subchapter S corporation income, the liquidating distribution income allocated to Miller was $5,279,458. According to the Director, Miller's total Subchapter S corporation income was $5,375,730, reportable and taxable under Subsection 5-1(p) of the Act.
*663 However, Miller did not report the cash under that subsection.
Miller's approach, discernable from his New Jersey Schedule B Statement, entitled "Income from Disposition of Property," and concerned with the reporting of income under Subsection 5-1(c) of the Act, was to list his liquidating dividend from the sale of his stock as $5,060,810, a figure taken from line 20 of his federal Schedule K-1, which reported property distribution resulting from the Shore Cable stock sale. From that he deducted a "cost" of $565,802, which was his basis in the stock for federal purposes, and accordingly stated a net gain of $4,495,008. He listed, as well, a number of other personal capital transactions, most yielding losses, and concluded on Schedule B that his net income from disposition of property was $4,335,811. Ultimately, he adjusted this figure, in a manner that is not in dispute, to $4,341,291, which he reported as his gain under Subsection 5-1(c).
In his "NOTICE OF DEFICIENCY," the Director adjusted Miller's return by eliminating the Subsection 5-1(c) gain and adding an assessment under Subsection 5-1(p) of $5,375,730 for net pro rata Subchapter S corporation income, thereby creating the justification for most of the additional taxes claimed to be due. The Director explained his result, in part, by first calculating the consequences of Miller's sale of his stock. As to Miller's New Jersey basis in the stock, the Director provided the following figures:

 Balance New Jersey
 AAA-Worksheet C ................ $4,814,803
 Capital Stock .................. 20,000
 Paid in Additional Capital ..... 1,132,639
 Loans from Shareholders ........ 407,294
 Prior year's unused losses ..... 183,930
 -----------
 Total NJ Adjusted Basis ........ 6,558,666

He then calculated Miller's loss on the sale of the stock as follows:

 Liquidating Distribution
 Per NJ K-1 .................. 5,279,458
 Less:
 New Jersey Adjusted Basis
 (See above) ................. (6,558,666)
 Loss on Disposition of
 Stock ....................... (1,279,208)

The Director then turned to the subject of Miller's gains and losses from the disposition of property. He listed the gains and losses as reported by Miller with one major exception: in lieu of the gain of $4,495,008 reported by Miller on the sale of the Shore Cable stock, the Director listed a loss, based on his calculation above, of $1,279,208. The result was an overall nondeductible Subsection 5-1(c) loss of $1,432,925.
The Director explained that "a taxpayer may not net the gain or loss on the disposition of the S corporation stock against the net pro rata share of S corporation income which was received from that S corporation in the same tax year."
After adjusting the net pro rata share of S corporation income from Miller's "0" to $5,375,730, the Director provided this further explanation:
To adjust for the net pro rata share of S corporation from Shore Cable Co., of NJ Co., Inc. (New Jersey electing S corporation) as per the enclosed Worksheet B.
Be advised that a shareholder of a New Jersey electing S corporation is required to report his net pro rata share of the S corporation income. Net pro rata share of S corporation income is calculated on a limited flow-through basis. The income, *664 gain or loss earned by a S corporation does not maintain its character when passed through to the individual shareholders. The S corporation shareholder will report the income from the S corporation only in the category of net pro rata share of S corporation income.
The shareholder's gain (or loss) on disposition of their S corporation shares is reportable as Net gains or income from the disposition of property.
Under the New Jersey Gross Income Tax Act the net pro rata share of S corporation income as reported on the Schedule K-1 from Shore Cable of NJ., Inc. and the individual shareholder's gain or loss on the liquidation of the S corporation shares are two separate and distinct transactions and are reportable in different categories of income.

II
We turn first to the Director's determination, acknowledging from the outset that it is supported by a literal application of the language used in the Act.
The Act imposes taxes on distinct and separate categories of income. N.J.S.A. 54A:5-1. Since income is taxed on a category-by-category basis, the Act expressly prohibits the netting of income and losses among the different categories. N.J.S.A. 54A:5-2; Walsh v. Director, Div. of Taxation, 15 N.J.Tax 180, 184 (Tax 1995); and Marrinan v. Director, Div. of Taxation, 17 N.J.Tax 47, 51 (Tax 1997).
The Act provides only one category for the reporting of Subchapter S corporation income, N.J.S.A. 54A:5-1(p), which provides for taxation of the "[n]et pro rata share of S corporation income." The Legislative history leaves no room for doubt about this. Thus, the Joint Legislative Committee of Economic Recovery, Statement to Assembly Committee Substitute for Assembly, Nos. 273 and 1870 (June 2, 1993), categorically states that "[a]ll of the items of income, loss and deductions of an S corporation are passed through to shareholders and netted in a single New Jersey gross income tax category [emphasis added]." Identical language appears in the Statement of Assembly Appropriations Committee to Assembly Committee Substitute for A Nos. 273 and 1870 (June 3, 1993) ("[a]ll of the items of income, loss and deduction of S corporations are passed through to shareholders and netted in a single New Jersey gross income tax category.") (emphasis added).
Since the Act provides an entirely separate category of income for the sale of Subchapter S corporation stock, N.J.S.A. 54A:5-1(c), the Director views plaintiffs' tax return as an improper attempt to net income and losses from different categories in violation of N.J.S.A. 54A:5-2. He also argues that his approach is consistent with the legislative design not to tax return of capital because his calculation results in the reporting of a loss under Subsection 5-1(c), which the taxpayers could use to offset any gains they might have under that section. On this record, we disagree.
The problem with the Director's literal application of the Act is that, despite what he says, it unavoidably results in a tax on the return of capital. That is so because what the Director categorizes as Miller's net pro rata Subchapter S corporation income resulting from the asset sale, $5,375,730, obviously includes a return of a substantial portion of his investment; and yet, it is taxed in full. While the second transaction, i.e., the liquidation of the stock, results in a loss which, under the Director's approach, may be offset by other gains, it does not follow that taxation of capital has not occurred; it merely means that it may be ameliorated. That is inconsistent *665 with the legislative intent not to tax capital at all, as expressed in that portion of N.J.S.A. 54A:5-1(c) dealing specifically with Subchapter S corporations, and as recognized by Koch v. Director, Div. of Taxation, 157 N.J. 1, 8-14, 722 A.2d 918 (1999). Therefore, based on the record before us, we reject the Director's interpretation of the Act.
We also find the Tax Court's approach to be unsatisfactory in two major respects. First, it determined that Subsection 5-1(p) does not include "income outside of [the Subchapter S corporation's] ordinary trade or business, such as capital gains for a corporation that is not in the business of investing in or trading capital assets ...." 19 N.J.Tax at 533. In other words, it created a sub-category of income to be taxed, not under Subsection 5-1(p), but under the general provision of Subsection 5-1(c) concerned with net gains from disposition of property. That result is inconsistent with the clear language of the Act and the supportive legislative history cited above. Second, the Tax Court, believing it was confronted by a situation unanticipated by the Legislature, concluded that the Director, contrary to the legislative intent not to tax return of capital, had improperly refused to allow Miller "to deduct his basis in Shore Cable Co. stock from the passed-through proceeds of Shore Cable Co.'s sale of all its assets." 19 N.J.Tax at 531. The difficulty with that conclusion is that Miller did not attempt to deduct his New Jersey basis from the passed-through proceeds of the sale as calculated under the Act. Instead, as noted above, he deducted his federal basis of $565,802 from his federally-reported liquidating dividend on the sale of his stock, which he reported as $5,060,810. In endorsing that approach, the Tax Court inappropriately disregarded New Jersey's concept of adjusted basis for Subchapter S corporations.
Although the Tax Court appears to have viewed other sections of the Act as providing some inferential support, it concluded by expressing the view that the "the language of the statute is less than precise, and the statute must be applied to fact situations not contemplated by the Legislature." 19 N.J.Tax at 537.
We agree that when confronted with words whose literal application would cause anomalous or absurd results, courts should readily ask whether the "instant case involves a situation which apparently escaped the attention of the draftsman ...." Dvorkin v. Dover Tp., 29 N.J. 303, 313, 148 A.2d 793 (1959). The expansive nature of our duties in this regard was thoughtfully expressed by former Chief Justice Weintraub in New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 135 A.2d 465 (1957):
It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms."
[Id. at 160, 135 A.2d 465 (citation omitted.)]
Although the Tax Court correctly looked to those principles in resolving this case, since the literal statutory words are incompatible with the overall legislative purpose not to tax a return on capital, the only *666 solution that appears to us to make sense, without doing violence to the Act, is to treat these transactions as a sale of corporate stock.
Consider what would have occurred if, instead of having Shore Cable sell its assets, Miller had sold his stock in Shore Cable to the third party. In that event, his adjusted New Jersey basis would have been considerably lower than that calculated by the Director. See N.J.S.A. 54A:5-11(c). His basis for the sale of stock to the third party would have been lower precisely because, in that scenario, it would not have been increased by any Subsection 5-1(p) income, apart from the $6,969 of ordinary income. As a result, he would have had to report a substantial gain, but one which fully took into account his New Jersey adjusted basis. In other words, no tax on return of capital would have occurred. Moreover, Miller's other losses reportable under Subsection 5-1(c) could have been offset by the gain from the disposition of the Subchapter S corporation stock, to the taxpayer's reasonable advantage. That Miller might have had insufficient losses from other sources to offset the gain arising from a sale of his stock to a third party, would not mean that he was denied recovery of capital on the sale of his stock since the inability to offset a gain with a loss from an unrelated asset sale is not an issue involving return of capital.
Miller, however, chose, or as a matter of practical business considerations was obliged, to structure the sale of his cable television business, not by a sale of stock, but by having the corporation sell its assets, followed immediately by the stock liquidation transfer between himself and his Subchapter S corporation. Although he combined these transactions for tax reporting purposes on an unsound theory, the Director's refusal to treat them as one transaction appears on this record to be inconsistent with the Act.
We are inclined to believe that if the Legislature had anticipated this situation, it would have provided for taxation of these transactions as if they were one transaction involving a sale of stock to a third party, with the tax being calculated precisely in accordance with the provisions of N.J.S.A. 54:5-1(c) specifically governing Subchapter S corporations. We do not perceive any other method for avoiding a tax on return of capital.
The Director's argument in support of a literal application of the Act relied in part on the principles enunciated in General Trading Co. v. Taxation Div. Director, 83 N.J. 122, 136-137, 416 A.2d 37 (1980):
[A] voluntary business decision "is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred." Commissioner v. National Alfalfa Dehydrating and Milling Co., 417 U.S. 134, 148, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717, 727 (1974).
This Court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not..., and may not enjoy the benefit of some other route he might have chosen to follow but did not. "To make the taxability of the transaction depend upon the determination whether there existed an alternative form which the statute did not tax would create burden and uncertainty." (Id. at 149, 94 S.Ct. at 2137 (citations omitted)).
He suggests those principles support his determination because Miller chose to engage in an asset sale followed by the stock liquidation instead of selling his stock directly *667 to the third party. In other words, the Director says that he taxed what actually occurred while Miller asked to be taxed on what might have occurred. We disagree because in our view, based on this record, imposition of a tax in the manner we have suggested results from what we believe to be a correct construction of the Act. Nonetheless, for the reasons stated above, we remand to the Tax Court for further consideration of the issue.
Reversed and remanded for further proceedings not inconsistent with this opinion.
NOTES
[1] His wife, plaintiff Debra Miller, is a party solely because a joint return was filed.