KUSKIN, J.T.C.
This matter requires a determination of plaintiffs’ liability under the Gross Income Tax Act, N.J.S.A. 54A:5-1 to :10 — 12 (the “GIT Act”), for tax year 1995 resulting from the sale of subchapter S corporation stock in a transaction involving an election under § 338(h)(10) of the Internal Revenue Code.[1] As explained in more detail below, this election results in the federal tax treatment of a sale of S corporation stock to a corporate purchaser as a sale of assets by the S corporation (resulting in a step-up in the basis of the assets) followed by a liquidating distribution by the “selling” corporation to its shareholders. Two issues are presented under the GIT Act: (1) may plaintiff deduct his basis in his S corporation stock in determining taxable income, and (2) may the installment method be used in reporting income from the sale. For the reasons set forth below, I hold that basis may be deducted and that the installment method may be used.
*143 I.
Facts and Contentions of the Parties
The following facts have been stipulated. At all relevant times, plaintiffs were New Jersey residents. Plaintiff Joel Mandelbaum owned a 12.010559% interest in Dalcomp, Inc., a New Jersey electing S corporation for tax year 1995. On January 30, 1995, he and all other shareholders of Dalcomp entered into an agreement to sell their corporate stock to Thompson Municipal Services. The transaction closed on the same date. Mr. Mandelbaum’s share of the proceeds of the transaction was $6,000,000. He received a payment from Thompson of $5,580,000 on January 30, 1995, and the balance of $420,000 was placed in escrow and paid to him in 1996. On October 11, 1995, Thompson and the former Dalcomp shareholders filed a § 338(h)(10) election with the Internal Revenue Service.
For tax year 1995, Dalcomp issued to Mr. Mandelbaum a New Jersey Schedule NJ-K-1 showing $5,509,134 as his pro-rata share of S corporation income and a federal Schedule K-l showing $5,502,254 as his pro-rata share of S corporation net long term capital gain. Each of the K-l’s also reported a distribution to him of $6,009,673.
In their 1995 federal income tax return, plaintiffs reported $5,502,254 as net long term gain from an S corporation and $311,329 as a long term capital loss. This loss consisted entirely of Mr. Mandelbaum’s basis in his Dalcomp stock and was computed after allocating $6,216 of his total basis of $317,545 to the escrow amount of $420,000. Plaintiffs netted the loss of $311,329 against the gain of $5,502,254, subtracted a long-term capital loss carryover of $2,790, and reported a “net long-term capital gain,” for federal tax purposes, of $5,188,155.
In their 1995 New Jersey gross income tax return, plaintiffs reported $5,190,946 as “[n]et gains or income from disposition of property.” This amount consisted of the $5,502,254 reported in the federal return, less a basis allocation of $311,308 ($311,329 reduced by a gain from another source). Plaintiffs did not report *144 any S corporation income. On July 12,1996, plaintiffs filed an amended 1995 gross income tax return in which they deleted the gain of $5,190,946 reported on their original return and reported $5,230,449 as them net pro-rata share of S corporation income. This amount represented the income from the sale of Mr. Mandelbaum’s stock in Dalcomp attributable to 1995, less his “cost” of the stock.
On December 17, 1998, the Director sent plaintiffs a Notice of Deficiency which (a) disallowed the deduction of Mr. Mandelbaum’s basis in his stock from his S corporation income, (b) disallowed the use of the installment method of reporting pursuant to which Mr. Mandelbaum had allocated a portion of the proceeds of the sale to tax year 1996, and (e) determined that his S corporation income for 1995 was $5,929,012. This amount represented 12.010559% of the portion allocated to New Jersey of Dalcomp’s net gain from the deemed sale of its assets pursuant to the § 338(h)(10) election. To this amount, the Director added gain on Mr. Mandelbaum’s stock resulting from the deemed liquidation of Dalcomp (the gain represented the excess of the distribution by Dalcomp to Mr. Mandelbaum over his New Jersey adjusted basis in his Dalcomp stock). Plaintiffs filed a protest, resulting in the issuance of a revised Notice of Deficiency which determined that the deemed liquidation of Dalcomp resulted in a loss not a gain to Mr. Mandelbaum, and denied a deduction of the loss from the previously determined $5,929,102 in S corporation income. Plaintiffs then submitted additional arguments in support of their protest. After a conference with plaintiffs’ representative, the Director issued his Final Determination on August 15, 2000, upholding the gross income tax assessment as contained in the revised Notice of Deficiency. Plaintiffs paid the tax determined by the Director and filed this appeal seeking a refund, plus interest, of the tax that would not have been payable for tax year 1995 if Mr. Mandelbaum had been allowed to deduct his adjusted basis in his Dalcomp stock and had been allowed to use the installment method of reporting.
*145 Plaintiffs contend that, for purposes of determining their gross income tax liability in New Jersey for 1995, Mr. Mandelbaum’s sale of his Dalcomp stock should be treated as it actually occurred, that is, a sale of stock, so that tax is imposed under N.J.S.A. 54A:5-lc (taxing “[n]et gains or income from disposition of property”) and they are entitled to deduct Mr. Mandelbaum’s basis in the stock from his share of the proceeds of the purchase by Thompson. The Director asserts that: (1) plaintiffs are bound by the § 338(h)(10) election which governs the gross income tax treatment of the stock sale, (2) the proceeds of the sale passed through Dalcomp to Mr. Mandelbaum as “[n]et pro-rata share of S corporation income,” a category of income taxable under N.J.S.A. 54A:5-lp, and (8) Mr. Mandelbaum’s basis in his Dalcomp stock relates to a different category, namely, N.J.S.A. 54A:5-lc, and may not be deducted because inter-category netting of income and losses is prohibited under N.J.S.A. 54A:5-2.
II.
Section 338(h)(10)
I.R.C. § 338(h)(10) does not expressly permit an election to be made in connection with the sale of S corporation stock, but regulations promulgated pursuant to this section permit the election. Treas. Reg. § 1.338(h)(10)-l. The regulations require that the election be made jointly by the acquiring corporation and by the S corporation shareholders. Treas. Reg. § 1.338(h)(10)-l(c)(2). When an election is made, the S corporation is treated as if it had sold all of its assets to a hypothetical new corporation, which is identical to the “selling” corporation, for consideration which includes the discharge of the selling corporation’s liabilities. Treas. Reg. § 1.338(h)(10)-l(d)(3)(i). Immediately thereafter, the selling corporation is deemed to make a liquidating distribution to its shareholders and terminate its existence. Treas. Reg. § 1.338-1 and § 1.338(h)(10)-l(d)(4).
For Federal income tax purposes, the hypothetical sale of assets and liquidation are treated as if they actually occurred. Treas. Reg. § 1.338(h)(10)-l(d)(4)(i). Thus, the transactions comprise *146 two taxable events. The first is the deemed sale of the S corporation’s assets. The S corporation is taxable on any gain realized from this transaction. Treas. Reg. § 1.338(h)(10)~ l(d)(3)(i). The corporation’s shareholders recognize no gain or loss in connection with the sale of their stock, Treas. Reg. § 1.338(h)(10)-l(d)(5)(iii), but “take them pro-rata share of the deemed sale tax consequences into account under section 1366 and increase or decrease their basis in [the selling corporation’s stock] under section 1367.” Treas. Reg. § 1.338(h) (10) — 1 (d) (5) (i). This basis adjustment has significance in connection with the second taxable event, the deemed liquidation of the corporation. The amount of the adjustment will determine whether the deemed liquidation produces capital gains taxable to the shareholders or capital losses. Treas. Reg. § 1.338(h)(10)-l(d)(5)(iii).
I.R.C. § 1366 provides that S corporation shareholders are taxable on their respective pro-rata shares of the corporation’s “items of income (including tax-exempt income), loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder,” as well as the corporation’s “[n]onseparately computed income or loss.” I.R.C. § 1366(a)(1). The character of any item of income passed through to a shareholder is “determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation.” I.R.C. § 1366(b).
I.R.C. § 1367 provides, in part, that a shareholder’s basis in S corporation stock is increased by the items of income described in Section 1366(a)(1), and decreased by the items of loss described in Section 1366(a)(2). I.R.C. § 1367(a)(1). Basis is also reduced by distributions from the S corporation. I.R.C. § 1367(A)(2).
No New Jersey taxing statute provides for an election similar to that permitted under I.R.C. § 338(h)(10). In General Building Products Corp. v. Director, Div. of Taxation, 14 N.J. Tax 232 (Tax 1994), aff'd, 15 N.J. Tax 213 (App.Div.1995), the Tax Court considered the consequences of a § 338(h)(10) election in the context of an appeal of a corporation business tax assessment. In that case, a parent corporation sold all of the stock of its wholly- *147 owned subsidiary. In connection with the sale, the parties made an election under § 338(h)(10). After explaining in detail the operation and effect of the election, the court held: “Since New Jersey does not have similar underlying statutory authority and does not recognize consolidated returns, New Jersey is unable to recognize the 338(h)(10) election.” Id. at 240. The New Jersey corporation business tax regulations then in effect provided that, notwithstanding the federal tax treatment of § 338(h)(10) election, the parent corporation was obligated to pay corporation business tax based on its gain in connection with the sale of its subsidiary’s stock, and the subsidiary was required to pay corporation business tax based upon the gain realized in connection with the deemed sale of its assets pursuant to the election. The Tax Court held that the regulations were reasonable, even though they resulted in the imposition of tax on both the parent shareholder and the subsidiary.
After the General Building Products Corp. decision, the federal practice changed so that the filing of a consolidated return was not a prerequisite to a § 338(h)(10) election. As a result of this change, the Director amended his corporation business tax regulations to make them consistent with the federal tax treatment of the election. Under the amended regulations, the corporation whose stock is sold is taxable on the gain resulting from the deemed sale of its assets, but “[a] selling parent corporation in a Federal I.R.C. 338(h)(10) transaction does not recognize gain on the sale of target [that is, its subsidiary’s] stock for New Jersey purposes.” N.J.A.C. 18:7-5.8. See 28 N.J.R. 2515(a) (May 20, 1996) and 28 N.J.R. 3810(a) (August 5,1996).
III.
S Corporation Taxation Under the GIT Act
The provisions of the GIT Act relating to subchapter S corporations relevant to this matter are N.J.S.A. 54A:5-9 to -14, and N.J.S.A. 54A:5-lc and p. Under N.J.S.A. 54A:5-1, sixteen categories of income are subject to tax. “Net pro rata share of S corporation income” is one of those categories. N.J.S.A. 54A:5- *148 lp. S corporation income is defined as “the net of an S corporation’s items of income, loss or deduction taken into account by the shareholder in the manner provided in section 1366 of the federal Internal Revenue Code of 1986, 26 U.S.C. § 1366,” subject to specific exceptions to the federal treatment which are not applicable here. N.J.S.A, 54A:5-10. Under N.J.S.A. 54A:5-9, “S corporation income, dividends and gain of a shareholder of an S corporation shall be subject to the tax ... imposed on the shareholder’s pro-rata share, whether or not distributed, of the S corporation income for its taxable year ending within or with the shareholder’s taxable year.” The character of the S corporation income “shall be determined as if such items were received or incurred by the S corporation and not its shareholder.” N.J.S.A. 54A:5-10c.
The determination of a shareholder’s basis in S corporation stock is governed by N.J.S.A 54A:5-11. This statute sets forth the methodology for determining initial basis and provides for adjustments to basis, “in the manner required by section 1011 of the federal Internal Revenue Code of 1986,” by amounts equivalent to the shareholder’s pro-rata share of S corporation income. N.J.S.A. 54A:5-lle. I.R.C. § 1011 provides that basis adjustments shall be made as provided in I.R.C. § 1016, which sets forth a large number of types of adjustments including an adjustment as provided in I.R.C. § 1367. As discussed above, under § 1367, basis is increased by the amount of income of the S corporation attributable to the shareholder, and decreased by losses attributable to the shareholder and distributions to the shareholder.
N.J.S.A 54A:5-14 sets forth the GIT Act treatment of distributions to S corporation shareholders. In general, the treatment is consistent with the Internal Revenue Code. Thus, a distribution to a shareholder is “taken into account by the shareholder ... to the extent that the distribution is treated as a dividend or as gain from the sale or exchange of property in the manner provided by section 1368 of the federal Internal Revenue Code____” N.J.S.A. 54A:5-14a. However, the distribution has no gross income tax consequence “to the extent the distribution is applied against and *149 reduces the adjusted basis of the stock of the shareholder in the manner provided by section 1371(e) of the federal Internal Revenue Code ....” N.J.S.A. 54A:5-14b. Under I.R.G. § 1368, an S corporation distribution to a shareholder is not included in gross income “to the extent that it does not exceed the adjusted basis of [the shareholder’s] stock,” and any amount in excess of adjusted basis “shall be treated as gain from the sale or exchange of property.” J.R.C. § 1368(b)(1) and (2). Under I.R.C. § 1371(e), a post-termination distribution, before being applied against a shareholder’s adjusted basis, is first applied against the shareholder’s accumulated adjustments account. I.R.C. § 1371(e)(1). The intricacies and operation of the accumulated adjustments account are not relevant to this Opinion. See I.R.C. § 1368(e); Treas. Reg. § 1.1368-1 to -3.
IV.
The Impact of the § 338(h)(10) Election Under the GIT Act
The Director asserts that, under the foregoing statutory scheme, the gross income tax consequences to an S corporation shareholder as the result of a § 338(h)(10) election should be determined using principles set forth in the Internal Revenue Code and reflected in the Director’s corporation business tax regulations, and principles contained in the GIT Act, including the prohibition against the netting of different categories of income and loss. The Director’s application of those principles to the facts before me results in Dalcomp’s being deemed to realize a gain on the sale of its assets (which is subject to corporation business tax).[2] The gain passes through to each of the corporation’s shareholders as “[n]et pro rata share of S corporation income” under N.J.S.A. 54A:5-lp. The shareholders recognize no gain related to the sale of their stock (the actual transaction). However, the deemed liquidation of Dalcomp produces a capital *150 gain or loss taxable under N.J.S.A. 54:51A-lc (imposing tax on “[n]et gains or income from disposition of property”). Because c and p are separate categories of income, under N.J.S.A. 54A:5-2 (which provides that “a net loss in one category of gross income may not be applied against gross income in another category of gross income”), a category c loss cannot be deducted from category p income.
The Director’s position represents an interpretation of the S corporation provisions of the GIT Act which is not contained in any regulation or other formal promulgation. The only document provided or cited to me as reflecting the Director’s view of the gross income tax consequences of a § 338(h)(10) election is an opinion letter dated January 24, 1995 from the Division of Taxation to plaintiffs’ accountant. The letter cites no statutes or regulations other than I.R.C. § 338(h)(10) and states that it “is for the use only of the taxpayer requesting it.”
An ad hoc interpretation of the GIT Act with respect to § 338(h)(10) elections is an improper basis for assessing tax. Interpretative regulations are required. In Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 478 A.2d 742 (1984), the Supreme Court articulated the following criteria for determining when an administrative rule or regulation is required:
[A]n agency determination must be considered an administrative rule when all or most of the relevant features of administrative mies are present and preponderate in favor of the rule-making process. Such a conclusion would be warranted if it appears that the agency determination, in many or most of the following circumstances, (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to opei’ate only in futui'e cases that is, prospectively; (4) px'escribes a legal standai'd or directive that is not otherwise expressly px'ovided by or cleai'ly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear’ past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.
[Id. at 331-32, 478 A.2d 742.]
*151 Under criteria 2, 4, 5(i) and 6, federal taxation principles applicable to a § 338(h)(10) election can be applied to the GIT Act only by regulation.
The Director argues that no regulation is necessary because the definition of S corporation income in N.J.S.A. 54A:5-10 and its reference to I.R.C. § 1366 specifically cover § 338(h)(10) elections, citing a statement in Metromedia, that a regulation is not required when a tax statute addresses a transaction “with sufficient specificity.” Id. at 333, 478 A.2d 742 (citing Airwork Sew. Div. v. Director, Div. of Taxation, 97 N.J. 290, 478 A.2d 729 (1984)). I reject the Director’s argument because neither N.J.S.A. 54A:5-10 nor I.R.C. § 1366 expressly refers to § 338(h)(10) elections and the Director’s GIT Act regulations contain no such reference. Consequently, a New Jersey taxpayer, after a careful reading of the applicable GIT Act provisions and the Director’s regulations, would have no basis for concluding that a § 338(h)(10) election, resulting in hypothetical income to an S corporation, would affect the determination of the taxpayer’s liability under the GIT Act.
I also reject the Director’s argument that provisions of the Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -40 (the “CBT Act”) and regulations thereunder relieve the Director from any obligation to issue regulations under the GIT Act as to the impact of a § 338(h)(10) election on the gross income tax liability of an S corporation shareholder. The CBT Act and the GIT Act are separate and distinct. They are not in pari materia. In order to be in pari materia, statutes must have “the same purpose or object.” Richard’s Auto City, Inc. v. Director, Div. of Taxation, 140 N.J. 523, 540, 659 A.2d 1360 (1995). The object of the CBT Act is to impose a tax on a domestic or foreign corporation “for the privilege of having or exercising its corporate franchise in this State.” N.J.S.A. 54:10A-2. This tax is not imposed on individuals. By contrast, the purpose of the GIT Act is to impose tax on individuals, estates and trusts. Cooperstein v. Director, Div. of Taxation, 13 N.J.Tax 68, 93 (Tax 1993), aff'd, 14 N.J. Tax 192 (App.Div.1994).
*152 Finally, I reject the Director’s contention that Metromedia does not require an interpretive regulation to apply § 338(h)(10) principles to S corporation taxation under the GIT Act because applying those principles does not constitute a new or changed administrative policy. The Director cites no regulation or other administrative promulgation which sets forth what the Director now describes as his administrative policy. The Director refers to his statements about S corporation taxation appearing in State Tax News. However, none of those statements contains any reference to a § 338(h)(10) election. General statements are not an adequate substitute for an interpretative regulation when the effect of the Director’s alleged policy is to transform a sale of stock into a hypothetical sale of corporate assets to a hypothetical new corporation identical to the “seller,” and then a hypothetical liquidation of the sellei'. This is a far cry from situations involving issues of whether various types of actual S corporation income are to be lumped together under N.J.S.A. 54A:5-lp, as to which the Director’s State Tax News statements may be informative.
In the absence of valid regulations under the GIT Act, the Director may not import and apply federal tax principles from I.R.C. § 338(h)(10) and assess gross income tax in accordance with those principles. He must tax a transaction as it actually occurred. Thus, the Director may not treat Mr. Mandelbaum’s sale of stock as a hypothetical sale of corporate assets followed by a corporate liquidation. The sale of stock must be taxed as a disposition of property under N.J.S.A. 54A:5-le. Only net gains are taxable under that provision, so that Mr. Mandelbaum is entitled to deduct his basis in his Dalcomp stock in determining gross income tax liability.
Even if I were to accept the Director's contention that, under the GIT Act, Mr. Mandelbaum is bound by the § 338(h)(10) election, see General Trading Co., Inc. v. Director, Div. of Taxation, 83 N.J. 122, 416 A.2d 37 (1980) (holding that a taxpayer must accept the tax consequences of the taxpayer’s choice as to how to structure a transaction), I conclude that Mi’. Mandelbaum has the right to offset his basis against the proceeds of the sale of his *153 Dalcomp stock because the income Mr. Mandelbaum received in connection with the deemed asset sale by Dalcomp pursuant to the § 338(h)(10) election does not constitute “[n]et pro rata share of S corporation income” under N.J.S.A. 54A:5-lp.
Treating a sale of stock in accordance with a § 338(h)(10) election as a sale of S corporation assets, followed by a liquidating distribution, results in the creation of a hypothetical transaction identical to the actual transaction before the Tax Court in Miller v. Director, Div. of Taxation, 19 N.J.Tax 522 (Tax 2001) (appeal pending, Dkt. No. A-658-01T2 (October 4, 2001)). In that case, Judge Small applied to an S corporation the Supreme Court’s holding in Smith v. Director, Div. of Taxation, 108 N.J. 19, 527 A.2d 843 (1987), that income not generated in the regular course of business of a partnership should be taxed under N.J.S.A. 54A:5-1 in a different category from regular business income, and the Court’s holding in Koch v. Director, Div. of Taxation, 157 N.J. 1, 722 A.2d 918 (1999), that a taxpayer should not be taxed on a return of capital. He described an S corporation as a pass-through entity similar to a partnership, and held that income to a shareholder resulting from the sale of all of the corporate assets, followed by liquidation, is taxable under N.J.S.A. 54A:5-lc as gain from the disposition of property, and is not taxable under N.J.S.A. 54A:5-lp as S corporation income. I concur with Judge Small’s analysis which I need not reiterate. I conclude, therefore, that the Miller holding is applicable in determining the gross income tax consequences to Mr. Mandelbaum resulting from the § 338(h)(10) election. Consequently, the income passing through to Mr. Mandelbaum as a result of the deemed sale of Dalcomp’s assets is taxable under N.J.S.A. 54A:5-lc, and Mr. Mandelbaum may deduct his basis in his Dalcomp stock in order to determine his “[n]et gains or income from disposition of property.”
The Director Has criticized the Miller decision on a variety of grounds, many of which appear to have been advanced by him in Miller and rejected by Judge Small. I will respond to the Director’s criticisms to the extent that they are not already answered in Miller.
*154 The Director contends that, because IRS regulations treat the pass-through income resulting from a § 338(h)(10) election as part of subchapter S income, the income must receive the same treatment under the New Jersey Gross Income Act, and, therefore, Miller improperly placed the income in a different category. However, as explained in Miller, under the Internal Revenue Code, the S corporation income retains its character as capital gain against which basis may be off-set. Here, the Director seeks to tax the income produced by the hypothetical asset sale not as a capital gain under N.J.S.A. 54A:5-lc but as S corporation income under N.J.S.A. 54A:5-lp, thereby improperly depriving the taxpayer of the basis deduction permitted by the Internal Revenue Code principles which the Director invokes.
The Director also asserts that the Miller analysis is faulty because it precludes adjustments of basis under N.J.S.A. 54A:5-11c. This statute limits the adjustments to amounts equivalent to S corporation income. The Director’s analysis is valid only if the deduction of basis is dependent on the adjustment permitted under N.J.S.A. 54A:5-llc. However, Miller removed the income from the S corporation category and permitted a deduction of basis under N.J.S.A 54A:5-lc. A basis adjustment under N.J.S.A. 54A:5-llc, therefore, is irrelevant to the Miller analysis.
The Director challenges Miller’s reliance on Smith and Koch, arguing that subchapter S corporations are different from partnerships, and, therefore, the principles of these two decisions, both involving partnerships, are not applicable. As discussed in Miller, the taxation principles applicable to partnerships and S corporations are not identical, but, for the purposes of determining what constitutes taxable partnership income under category k of N.J.S.A 54A:5-1 and what constitutes subchapter S corporation income under category p of the same statute, the same principles apply. Under those principles, only income generated in the regular course of business is includable. Other income retains its character and is subject to tax if it fits within one of the other of categories of taxable income set forth in N.J.S.A. 54A:5-1.
*155 As another aspect of his contention that the differences between partnerships and S corporations warrant different tax treatment, the Director criticizes Miller on the grounds that symmetrical tax treatment of partnerships and S corporations is inappropriate and contrary to legislative intent. This criticism is inconsistent with, and contradicted by, statements by the Director in other contexts. These statements support the Miller analysis. In 1999, the Director amended the regulations relating to partnership taxation under the GIT Act. In commenting on the social impact of the proposed new regulations, he stated as follows:
These rules will have an impact on all sole proprietors, partnerships and partners in the State. Proposed new rules N.J.A.C. 18:35-1.1 and 1.3 insure that sole proprietors and partners are treated similarly under the gross income tax. Such taxpayers must meet the same standards for reporting income and deducting costs and expenses. Moreover, symmetry unit exist bet,ween these entities and S corporations and estates and trusts.
[30 N.J.R. 3377(b) (Sept. 21, 1998) (emphasis added).]
In regulations interpreting N.J.S.A. 54A:5-lb, which subjects “[n]et profits from business” to gross income tax, the Director provided as follows:
Gains from the sale, exchange or other disposition of trade or business property shall be taken into account in determining a taxpayer’s net profit from business .... The sale, exchange or other disposition of property which is not directly related to or employed in the conduct of a trade or business must be reported as described in N.J.S.A. 54A:5-le, net gains or income from the disposition of property. Gain or loss from the sale or liquidation of a business must be replied as described in N.J.S.A. 5^A:5-lc, net gains or income from the disposition of property.
[N.J.A.C, 18:35-1.l(c)5 (emphasis added).]
The Director argues that applying the Smith and Koch principles to S corporation income makes N.J.S.A. 54A:5-lp indistinguishable from N.J.S.A. 54A:5-lb and, therefore, superfluous. The Supreme Court effectively rejected this argument in Smith, holding that partnership income under N.J.S.A. 54A:5-lk includes only income earned in the regular course of a partnership’s business. The Court did not regard this interpretation as rendering k duplicative of b or superfluous. Similarly, treating N.J.S.A. 54A:5-lp as covering only income earned in the regular course of business does not render p duplicative of b or superfluous.
*156 The Director also asserts that incorporating the Smith principles into S corporation taxation may preclude the netting of S corporation income not earned in the regular course of business against corporate expenses. Whether the Director is correct -will have to await a ease involving the issue. If, however, the Director’s argument is accepted under the facts before me, the result is a violation of the principles of Smith and Koch.
The Director warns that Miller’s reliance on Koch could permit a taxpayer to claim that any income producing an adjustment in the basis of stock is, in effect, a return of capital taxable under N.J.S.A. 54A:5-le. This foreboding is far-fetched and ill-founded. The careful explanation in Miller of why income from the sale of all the assets of an S corporation is not included in S corporation income does not permit the rampant deduction claims hypothesized by the Director.
Finally, the Director asserts that the Koch principles should not apply because return of capital to an S corporation shareholder is not taxed under the S corporation provisions of the GIT Act, and was not taxed in Miller. The GIT Act provides that a corporate liquidating distribution is applied first against basis and not treated as income to the shareholder. N.J.S.A. 54A:5-llf; N.J.S.A. 54A:5-14b. Therefore, the Director argues, “to the extent the distributions represent a return of capital, the Director does not tax them. What he taxes is the net pro-rata share of income, the amount that is so reported on the New Jersey K-l, not the distributions by S corporations.” This argument is flawed because, as described above, Director here (as he did in Miller) contends that a shareholder’s basis in S corporation stock may not be deducted from “S corporation income” produced by the sale of all of the corporation’s assets. Basis represents the shareholder’s capital investment. By precluding the deduction, the Director taxes a return of capital.
In summary, the Director’s criticisms of Miller are unconvincing, and, if accepted, would result in taxation of capital gains produced by the sale (or deemed sale) of an S corporation’s assets as income earned in the regular course of business, resulting in S *157 corporation shareholders’ being taxed on the return of capital, all contrary to the principles of Smitk, contrary to the dictates of Koch, contrary to the Director’s regulations with respect to the sale or liquidation'of non-S corporation businesses, and contrary to the Internal Revenue Code treatment of S corporation shareholders in connection with § 338(h)(10) elections. As demonstrated above, the Director does not tax return of capital when a partnership-owned business sells all of its assets and then liquidates, because he taxes the proceeds of the sale under N.J.S.A. 54A:5-lc. A § 338(h)(10) election results in a deemed sale of assets by an S corporation. Therefore, if the Director recognizes the election, he must impose tax on the pass-through income as if an actual sale had occurred, in a manner consistent with his treatment of similar pass-through income in the partnership context.
V.
Applicability of the Installment Method of Reporting
In Estate of Guzzardi v. Director, Div. of Taxation, 15 N.J.Tax 395, 404 (Tax 1995), aff'd o.b. per curiam, 16 N.J. Tax 374 (App.Div.1996), the Tax Court held that N.J.S.A. 54A:5-lc incorporates by reference the federal installment method of reporting. The Guzzardi decision was cited with approval by the Supreme Court in Koch v. Director, Div. of Taxation, supra, 157 N.J. at 10-11, 722 A.2d 918. Therefore, in accordance with the foregoing conclusion that income from Mr. Mandelbaum’s sale of his Dalcomp stock is taxable under N.J.S.A 54A:5-lc, the installment method is applicable.
VI.
Conclusion
Based on the preceding discussion and analysis, I conclude that Mr. Mandelbaum may deduct his basis in his Dalcomp stock because, in the absence of regulations, the Director may not tax a sale of stock as if a hypothetical corporate sale of assets and liquidation had occurred pursuant to an I.R.C. § 338(h)(10) elec *158 tion. I further conclude that, even if gross income tax may be imposed in accordance with the election, basis is deductible because the income resulting from the deemed sale of assets and deemed liquidation is taxable under N.J.S.A, 54A:5-lc as “[n]et gains or income from disposition of property.” The installment method of reporting is applicable under either of these analyses.
Judgment in this matter will be withheld pending computation of plaintiffs’ tax liability for 1995 determined in accordance with this Opinion. Within thirty days from the date of this Opinion, the parties shall, pursuant to R. 8:9-3, submit an agreed computation of that liability and the refund due to plaintiffs, or, pursuant to R. 8:9-4, submit them respective proposed computations.

 The income in question resulted from the sale of stock owned by plaintiff Joel Mandelbaum. Judith Mandelbaum is a party plaintiff because she signed joint federal and New Jersey tax returns.

 Subchapter S corporations are subject to corporation business tax at a reduced tax rate, even though the income passes through to the corporate shareholders. NJ.S.A. 54:10A-5(c)(2) and (3).